## NEIGHBOR v. PACIFIC REALTY ASSOCIATION.

No. 2295.   Decided April 17, 1912 (124 Pac. 523).

1. BROKERS—CONTRACTS OF EMPLOYMENT—EVIDENCE—SUFFICIENCY. Evidence *held* to justify a finding that a broker was employed to procure a purchaser of real estate with an option to purchase the property himself.   (Page 613.)

2. BROKERS—CONTRACTS OF EMPLOYMENT—OBLIGATION OF PARTIES. Where a broker employed to procure a purchaser and given an option to purchase the property exercised the option to purchase before he commenced any negotiations for the sale of the property and without knowing that any one desired to purchase it, he could thereafter resell to any one for a larger sum without having to account to the owner therefor.   (Page 618.)

3. BROKERS—CONTRACTS OF EMPLOYMENT—OBLIGATION OF PARTIES. Where a broker employed to procure a purchaser, and given an option to purchase on terms specified, began negotiations with

a third person who desired to purchase and then exercised the option and sold the property to the third person at an advance, the broker must account to the owner. (Page 618.)

4. BROKERS—CONTRACTS OF EMPLOYMENT—OBLIGATION OF PARTIES. The rule that, where a broker employed to procure a purchaser, with an option to purchase himself, was guilty of breach of duty by exercising the option after he had made negotiations with a third person who desired to purchase, the penalty is the forfeiture of the compensation provided for in case of a sale, should not be applied to mere mistakes or omissions not amounting to misconduct or gross disregard of duty. (Page 619.)

5. BROKERS—CONTRACTS OF EMPLOYMENT—OBLIGATION OF PARTIES. A corporation was employed to procure a purchaser of real estate, and its officers entered into an open and fair agreement with the owner whereby the corporation was given an option to purchase on terms specified. The corporation elected to purchase within sixty days after the agreement. Negotiations with a third person who desired to purchase the property had begun, but the acts of the officers in conveying the property to the third person at an advance were done under a mistaken belief that the same were proper, and they were not guilty of any intentional wrong, though they failed to notify the owner of the facts. *Held* that, though they must account to the owner for the profits made on a resale to the third person, they were not deprived of the stipulated commission for procuring a purchaser. (Page 619.)

STRAUP, J. (dissenting).

APPEAL from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by Elihu G. Neighbor against the Pacific Realty Association.

Judgment for plaintiff. Defendant appeals.

REVERSED AND REMANDED.

*R. S. Farnsworth* for appellant.

*Halverson & Pratt* for respondent.

The appellant had an option on the property and had a right to buy it from Bertha A. Dailey. (1 Warvelle on Vendors (2d Ed.), sec. 237, page 292; *Robinson v. Easton,* 93 Cal. 80, 28 Pac. 796.) And the purchaser is not bound to disclose to his grantor in buying from him or her, the fact that he had already sold the land, or the price which he obtained for it. (*Saltontall v. Gordon,* 33 Ala. 149; *Williams v. Spurr,* 24 Mich. 335; *Synnot v. Shaughnessy,* 2 Id. (Hasb.) 122, 7 Pac. 82, aff. 130 U. S. 532, 9 Sup. Ct. 609, 32 L. Ed. 1038; *Ratke v. Tyler,* 111 N. W. 436; *Spinks v. Clark,* 147 Cal. 439, 82 Pac. 45; *Burt v. Mason,* 97 Mich. 127, 56 N. W. 365; *Caples v. Steel,* 7 Ore. 491; *Mark v. Duell,* 41 Wash. 403, 83 Pac. 313; *Keene v. Demelman,* 172 Mass. 17, 51 N. E. 189; *Campbell v. Beard,* 57 W. Va. 501, 50 S. E. 748.) Under any view of the case, bad faith must be proven by such representations as constitute fraud and not every representation is sufficient to base fraud. (*Schoelkoph v. Leonard,* 8 Colo. 159, 6 Pac. 209.) The original verbal option was afterwards merged in the contract of sale. (*Roberts v. Braffett,* 33 Utah, 51, 92 Pac. 789; *Menzel v. Primm,* 91 Pac. 754; *Frank v. Stratford Handcock,* 13 Wyo. 37, 77 Pac. 134, 67 L. R. A. 571, 110 Am. St. Rep. 963; *Smith v. Russell,* 80 Pac. 474.) And where as in this case the promise was either to buy the property or sell it to some one else, the right of election is with the promisor in the absence of an express provision in the agreement to the contrary. (7 Am. & Eng. Enc. of Law, 125, citing *McMillan v. Phil. Coal. Co.,* 159 Pa. St. 142.)

FRICK, C. J.

Respondent brought this action as assignee of one Bertha A. Dailey to recover the sum of $600 from appellant, which, it is alleged in the complaint, was received by it while acting as her agent in selling certain real estate belonging to her and for which amount appellant failed to account to her. Appellant filed its answer in which it denied the agency but

admitted that Mrs. Dailey had owned certain real estate and that appellant had sold the same; averred that before said sale it had purchased the real estate from her for a consideration agreed to by her. A trial to the court without a jury resulted in findings of fact and conclusions of law adverse to appellant, upon which findings and conclusions the court entered judgment requiring it to account to respondent for said $600, from which judgment this appeal is prosecuted. Appellant assails the findings of fact as not being sustained by the evidence, and in effect insists that the conclusions of law and judgment are contrary to law.

Respondent in support of his claims among other evidence produced and introduced the following letter:

"Ogden, Utah, March 9, 1910. Mr. F. R. Dailey, Hillsboro, Ore.—Dear Mr. Dailey: As the real estate market is still a little slow, and not desiring to keep you in suspense, we have concluded to take a chance on the property ourselves. Therefore we have made out a deed from the description on abstract, conveying property to the Pacific Realty Association for the consideration of $2000, with the understanding, however, that we deduct $100 as commission as agreed upon. Please have deed properly executed before a notary public, having your wife sign as follows: 'Bertha A. Dailey, formerly Bertha A. Neighbor.' It will be necessary for you to sign the deed also. As soon as deed is executed please forward same to the Utah National Bank of this city, instructing them to take up the McCormack mortgage and pay us $100 and send you draft for the balance. We have collected one month's rent of twelve dollars and are holding same subject to your order. If you have the water stock in your possession belonging to the property, please have the same assigned to us and forward with the other papers. Wishing you success in your new field of operations and thanking you in advance for your prompt attention in the above matter, we beg to remain, Yours very sincerely, Pacific Realty Association, by F. Allen McGuire, Secretary."

Respondent also produced another letter written by appellant to the Daileys dated March 31, 1910, in which appellant

inclosed a certificate evidencing a water right which was appurtenant to the real estate in question, and which certificate was issued in the name of Mrs. Dailey. She was requested to indorse the certificate in blank for the reason, as was stated in the letter, that "we (appellant) expect sooner or later to sell the property" and hence no name was to be mentioned in the assignment of the certificate so that the certificate could be made transferable to any one who might purchase the property. Another letter dated April 7, 1910, was introduced in evidence in which appellant informed the Daileys that considerable difficulty had been encountered by it in adjusting the amount due on a certain mortgage which was a first lien on the property in question and which was to be paid out of the proceeds of the sale. No information was imparted to the Daileys in any of the foregoing letters that there was a prospective purchaser for the property at a price in excess of the $2000 agreed upon between the Daileys and the officers of appellant, or at any price.

Respondent further proved that about the 5th or 6th of March, 1910, and before any of the letters were written, appellant, through its officers, had negotiated with one Williams for the sale of the real estate in question for the consideration of $2500. It was made to appear, however, that, although the purchase price had been agreed upon, Mr. Williams did not fully make up his mind to take the property until the 11th day of March, or two days after the first letter to which we have referred was written to the Daileys in which appellant proposed to purchase the property for the sum of $2000. On the day aforesaid, when Williams had concluded to purchase, he, as part payment of the purchase price, gave appellant a check for $500, and about a month thereafter, towit, the 14th day of April following, he paid the remainder of the purchase price and obtained a deed of conveyance of the property from appellant. It is also made to appear that the Daileys, immediately after receiving the first letter, executed and transmitted through the United States mails from Oregon to Ogden a deed conveying the property to appellant, and that appellant had settled with

the mortgagee holding the mortgage aforesaid, and had also paid a certain claim for special taxes which constituted a lien on the property out of the purchase price. On the 12th day of April, 1910, appellant remitted to the Daileys the remainder of the purchase money, which, after making all deductions, amounted to the sum of $1255.21, for which the Daileys duly acknowledged receipt. Respondent testified that as soon as he learned that appellant had sold the property to Mr. Williams for $2500 he informed the Daileys of the fact; that he did not learn of such fact and did not inform them until after the deals between the Daileys and appellant and between it and Williams had been consummated; that after he had so informed them they, on the 23d day of April, 1910, assigned any claim they might have by reason of the foregoing transactions against appellant to the witness. The assignment was made in writing and was produced in evidence.

On behalf of appellant its officers in substance testified that they were acquainted with the Daileys; that while the Daileys at one time were residents of Ogden, Utah, they, several years before, had moved to Hillsboro, Oregon; that during the winter of 1909-10 they visited their friends in Ogden, and while there they came to the witnesses with a view of having them either buy or sell the property in question. Mr. Hill, at one time an officer of appellant, testified that both Mr. and Mrs. Dailey had been to see him several times about buying the property; that about the 10th of January, 1910, or at least between that date and the end of the month, they again came to see him and told him that they could not stay much longer in Ogden but would have to return to Oregon soon to attend to their business affairs; that they wanted him to take the property. By reference to the bill of exceptions it appears that this witness testified as follows:

"I told them, 'No,' not then, I couldn't take it, because we bought a good deal of property and I am still not in a condition to take it. They said: 'We will go; we will leave this with you; you can have it; if you want to buy it yourselves

you have an option on it at that price, or you can sell it to anybody else as long as you net us $1900; that's all we want for the property; if you get us $1900 we will be satisfied.' "

On cross-examination he further testified that the agreement between him and the Daileys was to the effect that if appellant sold the property it was to have a commission of $100 to be deducted from the $2000; that nothing was said about what appellant was to have if the property was sold for a larger sum; and that appellant could buy it for $2000, and if so could deduct the $100 as commission; what the Daileys wanted was $1900 net.

Mr. Critchlow, who at the time of the trial was the secretary of appellant, testified that both Mr. and Mrs. Dailey came to appellant's office and that they there had a conversation about the sale of the property; that Mr. Hill, the witness just referred to, spoke to the witness in presence of the Daileys saying: "Mr. Critchlow, what do you think about buying this property?" The witness in his testimony continued as follows: "I didn't think just then we were in a position to consider it, and Mr. Dailey made the remark, 'We are anxious to get away; we have stayed here longer now than we should have done; and we would like to make some disposition of the property before we leave.' He said: 'If you take the property you are entitled to a commission, the same as anybody else; $1900 is all we want for the property.' And he urged us to take it, and the answer we gave him there was to the effect we would do the best we could, and we assured him we would either buy the property ourselves or turn it over to somebody else, and he told us he couldn't wait any longer, he had to go. And that was about the substance of the conversation." This witness also said that the Daileys were in appellant's office a number of times trying to make some disposition of the property upon the conditions testified to.

It appears that the Daileys left Ogden a short time after the foregoing conversation took place, and that the matter as between them and appellant was left in abeyance until March 2, 1910, when they wrote a letter to appellant asking what,

if anything, had been done about the property, and asking about some rent. On March 9th appellant wrote to the Daileys the letter which we have herein set forth in full, and thereafter the transactions outlined above were had. The statements made by the witnesses for appellant were not controverted nor questioned by the Daileys nor by any one else. The Daileys did not testify in the case.

Counsel for appellant insists that in view of the foregoing facts appellant's relation to the Daileys was that of a purchaser and not that of an agent, and for that reason appellant was not required to disclose the offers of Mr. Williams nor the price for which it sold the property to him. We think, however, that the testimony is clearly to the effect that, while appellant was given the right or an option to purchase the property at the stipulated price of $2000, it was also understood between it and the Daileys that appellant should continue to represent them in any sale that it might or could make of the property to any one else, and that in case the property was sold to any one else, or if appellant bought it for the consideration of $2000, it in either event was entitled to a $100 commission. The trial court apparently took the position that the only relation between the Daileys and appellant was that of principal and agent, and that appellant as such agent, in not disclosing all of the facts with regard to the offer of Mr. Williams and the proposed sale to him, was guilty of bad faith and concealment constituting fraud, and hence it must not only account to the Daileys or their assignee for the purchase price received from Williams, but must also account for the stipulated commission for the reason that it had forfeited the right to the same by its conduct.

There is no doubt under the authorities that, under the arrangement between appellant and the Daileys, if at any time before it commenced negotiations with Mr. Williams for the sale of the property to him, and without knowledge that he desired to purchase the same, and in the absence of any offer from any other source of a price in excess of $2000, it had concluded to purchase the property and had accordingly advised the Daileys of its election to do so, and, if the

Daileys had consented to the sale and had received the purchase price and had conveyed the property to appellant, that it could thereafter have resold the property to any one for a larger sum without having to account therefor. Moreover, if the foregoing arrangements had all been made openly and in good faith, it would have also been entitled to the $100 commission notwithstanding the fact that it was the purchaser. The following authorities are clearly to this effect: Warvelle on Vendors, sec. 236; *Stewart v. Mather*, 32 Wis. 344; *Robinson v. Easton E. & Co.*, 93 Cal. 82, 28 Pac. 796, 27 Am. St. Rep. 167; *Finnerty v. Fritz*, 5 Colo. 174; 1 Mor. Min. Rep. 437; *Rathke v. Tyler*, 136 Iowa, 286, 111 N. W. 436; *Keene v. Demelman*, 172 Mass. 17, 51 N. E. 188; *Fisher's Appeal*, 34 Pa. 29; *Burke v. Bours*, 98 Cal. 172, 32 Pac. 980; *Campbell v. Beard*, 57 W. Va. 501, 50 S. E. 747.

The difficulty with the case at bar, however, is that the appellant's election to purchase the property from the Daileys seems to have been inspired after its officers became aware that Mr. Williams desired to purchase the property, and after a purchase price in excess of $2000 had at least been discussed between him and such officers. The negotiations for the sale of the property to Mr. Williams had therefore commenced before appellant was the owner of the property, and apparently before it had elected to become such. The only conclusion permissible under the evidence, therefore, is that appellant at least commenced negotiations with Mr. Williams as an agent of the Daileys, and not as owner of the property. This being so, the authorities again leave no room for doubt that as such agent it was its duty to deal openly and fairly and to discharge the trust assumed by it with diligence and the utmost fidelity. Appellant was also required to inform the Daileys fully of all matters that might affect them in making a sale of the property, including any offers appellant had received for the same. The law does not allow the agent who also has a right to purchase to wait until some one makes an offer of an amount in excess of the agreed purchase price and then elect to purchase

the property at the lesser price without informing the owner
of the higher offer, and, after the agent has obtained the
consent from the owner to buy the property, then immediately
sell it for the higher price as his own property.   Such con-
duct is condemned by all the authorities, and under such cir-
cumstances equity will require the agent to account for the
full purchase price to the owner unless such owner with full
knowledge of all the facts and circumstances has ratified the
transaction.   While, as we have said, the law is clear with
respect to the foregoing principles, yet the courts are not al-
ways in harmony with regard to whether the facts in a given
case bring it within such principles or not.   Nor are the
courts always in perfect harmony with respect to the circum-
stances under which an agent who it is found should account
to his principal also forfeits his right to a commission or com-
pensation for his services.

It does not always follow as a necessary corollary that in
case it is found that the agent should account to his principal
for a larger amount than he has accounted for, that
for that reason alone he also forfeits his right to com-
pensation.   We think the true rule is stated by Mr.
Justice Mitchell, who in speaking for the Supreme Court of
Indiana in the case of *Rochester v. Levering,* 104 Ind. at
page 574, 4 N. E. at page 210, uses the following language:

"Fully recognizing the rule that where an agent has violated his
trust, or has been guilty of fraud or gross neglect of duty, thereby
imposing upon his principal the necessity of expensive litigation
in order to secure his rights, the penalty for such fraudulent con-
duct or willful violation of duty is the forfeiture of all compen-
sation, yet this rule should never be applied to mere mistakes in
the keeping of an account, or errors of judgment, or other omissions
which do not amount to misconduct or gross and culpable neglect
or disregard of duty."

While we are clearly of the opinion, as was the Supreme
Court of Indiana, that in view of all the facts the agent in
this case should account to the principal for all the money
received, yet, like that court, we are also of the opin-
ion that in view of all the facts and circumstances the

court is not called upon to enforce the rigorous rule of depriving the agent of compensation. In other words, we do not think that under all the circumstances of this case the court should impose a penalty upon the appellant. The officers of appellant entered into an open and fair agreement with the Daileys that appellant might at some time purchase the property. The selling price and the commission were fully and fairly agreed upon. Appellant elected to purchase the property in less than sixty days after the agreement was made. This was not an unreasonable time in view that it does not appear that there was any unnatural or unusual movement in or demand for real estate in Ogden, either before or at the time appellant elected to purchase. The officers who acted for appellant therefore no doubt thought that, in view of the option to purchase, they could exercise the right to do so at any time before the Daileys withdrew the same, and that, if they purchased at the price agreed to by the Daileys with appellant, appellant was simply complying with the agreement. The officers, however, overlooked the fact that appellant stood in a dual relation to the Daileys as well as to the property, and that in its relation as agent it was required to deal fairly, openly, and with the strictest fidelity. We are of the opinion, however, that the officers were not guilty of any intentional wrong although they failed to fully discharge their duty to their principal. Their conduct, we think, was induced by the fact that they supposed that, if they elected to purchase the property at the price agreed upon between them and the Daileys, they were guilty of no wrong in not advising them of the negotiations pending with Williams. In this they were mistaken. Their derelictions were, however, more apparent than real and constituted errors of judgment rather than actual misconduct or a disregard of duty. While the law does not excuse their conduct in so far as requiring an accounting, yet, upon the other hand, it does not require that they be also penalized. We think that under the peculiar facts and circumstances of this case, the court went too far in entering a judgment by which it deprived the appellant of the $100 commission which was

fairly agreed upon whether the property was purchased by it or by some one else.

The judgment therefore is reversed, and the cause is remanded to the district court of Weber County, with directions to set aside and vacate the findings of fact and conclu-. sions of law in so far as they are inconsistent with this opinion; to require the appellant to account to the respondent for the full amount of the purchase price received by it for the real estate in question, but to allow the appellant the sum of $100 as compensation, and to deduct the same from such purchase price; to make findings of fact and conclusions of law in accordance with the foregoing views, and to enter judgment accordingly. Respondent to pay the costs on appeal.

McCARTY, J., concurs.

STRAUP, J. (dissenting).

I dissent. I think the judgment should be affirmed. It was alleged in the complaint that the assignors of plaintiff entered into an agreement with the defendant, a real estate agent or broker, by the terms of which the defendant undertook to procure a purchaser and negotiate a sale of the property for not less than $2000, for which the defendant was to receive a commission of five per cent of the purchase price. It is further alleged that the defendant procured a purchaser who was able and willing to purchase the property for the sum of $2500, and that the defendant to obtain larger compensation than was agreed upon and to cheat and defraud the assignors withheld from them the fact that it had procured a purchaser for the sum of $2500, and falsely stated to them that, owing to the dullness of the real estate market, they were unable to find a purchaser, and proposed that it would itself purchase the property for $2000 less a commission of $100, and requested that they execute a deed in its name and forward it to the defendant; that they, relying upon and believing the representations to be true, executed and forwarded the deed to the defendant, who in turn conveyed the property to the

purchaser for the sum of $2500; and that the defendant accounted to them for only the sum of $1900. The defendant denied the agency and all other allegations of the complaint and alleged that it had purchased the property from the assignors and sold it for $2500. The court found the issues in favor of the plaintiff and the facts as alleged in the complaint, and rendered a judgment against the defendant for $600, less special assessments against the property paid by the defendant amounting to $43.54.

I see no reason for allowing the defendant a commission. The evidence clearly shows the relation of agency between the defendant and the assignors. They listed the property with the defendant to be sold for a price not less than $2000, for which the defendant was to receive a commission of five per cent of the sale price. After the property had been listed with it for some time, and just before the assignors left Utah to go to Oregon, they called on the officers of the defendant having charge of its business and expressed a desire to dispose of it and requested the defendant to buy it. The officer told them that they had purchased a good deal of property and that they were not able to do so. Thereupon the assignors said to them, as testified to by one of the officers, "We will go; we will leave this with you; you have an option on it at that price ($2000), or you can sell it to anybody else as long as you net us $1900; that is all we want for the property; if you get us $1900, we will be satisfied."

Another officer testified that the assignors said, " 'We are anxious to get away; we have stayed here longer now than we should; and we would like to make some disposition of the property before we leave. If you take the property you are entitled to a commission the same as anybody else; $1900 is all we want for the property,' and he urged us to take it, and the answer we gave him was that we would do the best we could, and we assured him that we would either buy the property ourselves or turn it over to somebody else."

There the matter rested. The assignors left Utah and went to Oregon on the 2d day of February. The defendant continued to show the property to prospective purchasers,

and thereafter procured a purchaser who was able and willing
to buy the property for $2500. On March 2d the assignors
wrote the defendant: "I heard you rented the place I left in
your hands to sell. Have you yet made a deal with any one?
. . . I wish you to write me all details concerning the
place." On March 9th, and after the defendant had found
the purchaser able and willing to buy the property for $2500,
he having made the first payment of $500 on the 11th of
March, the defendant wrote the assignors, "As the real estate
market is still a little slow, and not desiring to keep you in
suspense, we have concluded to take a chance on the property
ourselves. Therefore we have made a deed," etc., "for a con-
sideration of $2000, less $100 as a commission as agreed
upon," which the assignors were requested to sign and return.
"We have collected one month's rent of twelve dollars, and
are holding same subject to your order." The deed was
made and returned and the property thereafter conveyed by
the defendant to the purchaser and the balance of the $2500
paid by him. After the deed was received by the defendant,
and before it conveyed the property to the purchaser, it wrote
another letter to the assignors, still withholding the fact that
it had found a purchaser, in which it requested them to make
an assignment in blank of a water certificate, for the reason
that "we expect sooner or later to sell the property," and to
avoid the making of a new certificate.

The court having found and the evidence showing that the
relation of agency existed between the assignors and the de-
fendant, and that the purchaser was procured and the prop-
erty sold in pursuance thereof, I think the defendant, the
agent, did not truthfully make known to the assignors, the
principals, all matters pertaining to the transaction, fraud-
ulently misrepresented and suppressed facts concerning it,
and undertook to derive an advantage to itself in violation of
its duty to the assignors, and therefore forfeited all claim to
a commission or other compensation.

Conceding that the assignors before they left Utah to go
to Oregon offered to sell the property to the defendant for
$2000, less $100, yet it clearly appears that the defendant

did not accept the offer nor take an option to purchase the property, nor indicate any desire to purchase it, until after it had found a purchaser who was able and willing to purchase the property for $2500. Then the defendant withheld such information from the assignors and wrote them that the real estate market was slow, and that the defendant had "concluded to take a chance on the property" and itself to buy it for $2000, less $100, and requested them to execute and forward a deed to it. Had the defendant informed the assignors that it had porcured a purchaser who was able and willing to buy and who would buy the property for $2500, and therefore the defendant now accepted the offer theretofore made by the assignors to sell the property to the defendant for $2000 less $100, and demanded of them to do so, it well knew that the assignors were then not obligated to comply with such demand. And, to induce them to do what the defendant could not legally or rightfully demand of them, it intentionally failed to make known to, and suppressed from them, facts concerning the transaction.

I think the judgment of the court below is right.