Appeal from Third District.

## BURT & CARLQUIST CO. v. MARKS et al.

No. 3211. Decided Dec. 12, 1918. (177 Pac. 224.)

1. JUSTICES OF THE PEACE—APPEALS—JURISDICTION. Where a justice of the peace court is without jurisdiction of subject-matter of an action commenced therein, an appellate court to which the case is appealed does not acquire jurisdiction, even though it would have had original jurisdiction of the subject-matter. (Page 81.)

2. APPEAL AND ERROR—JURISDICTION OF APPELLATE COURT. In cases appealed from an inferior court to a superior court having appellate jurisdiction only, the appellate court acquires only such jurisdiction as the inferior court had. (Page 81.)

3. APPEAL AND ERROR—JURISDICTION—RIGHT TO OBJECT—WAIVER. Where parties, on appeal to court having original jurisdiction of subject-matter, submit controversy for trial and adjudication, and the cause proceeds to trial and final judgment, they will be held to have waived their right to object to the jurisdiction of the appellate court. (Page 81.)

4. COURTS—CITY COURT—JURISDICTION—RIGHT TO OBJECT—WAIVER. Under Comp. Laws 1907, section 686x10, giving city court jurisdiction up to $500, and section 686x17, as amended by Laws 1909, c. 87, giving appeal from judgment of city court with like effect as from justice court, where real estate agent sued in city court for $100 commission, and on appeal to the district court defendant cross-complained for secret profits of $600, and they went to trial, resulting in final judgment, plaintiff could not on appeal question jurisdiction of district court, since city court had jurisdiction of action as commenced, while district court had jurisdiction both of action as commenced and of counterclaim, and by going to trial, question of jurisdiction was waived.[1] (Page 81)

5. BROKERS—SECRET PROFITS—OWNERSHIP. Where agent for sale of farm employed another firm as agent, which firm sold it at an advance over minimum price demanded and pocketed the difference, the landowner was entitled to such secret profits.[2] (Page 84.)

6. BROKERS—SECRET PROFITS—OWNERSHIP. Where agent for sale of farm employed another firm as agent, which sold the farm at price in excess of minimum demand, pocketing the difference, the seller, by a cross-complaint for such difference, ratified the appointment and the sale, so that there was a privity of contract with the selling

---

[1] *Wheatley* v. *O. S. L. R. Co.*, 49 Utah, 105, 162 Pac. 86.

[2] *Neighbor* v. *Pacific Realty Ass'n*, 40 Utah, 610, 124 Pac. 523, Ann. Cas. 1914D, 1200.

agent which entitled the owner to recover, as the real party in interest, such difference.  (Page 86.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. H. M. Stephens,* Judge.

Action by the Burt & Carlquist Company against C. E. Marks and John Anderson, wherein defendant Anderson filed a cross-complaint.

Judgment for defendants.  Plaintiff appeals.

AFFIRMED.

*N. V. Jones* and *Ephraim Hansen* for appellant.

*J. H. Hurd* and *C. E. Marks* for respondents.

## STATEMENT OF FACTS.

On or about September 1, 1912, John Anderson, interpleaded defendant and cross-complainant, was the owner of a piece of real estate, consisting of about three acres, situated in Salt Lake County, Utah.  Some time during the early part of September, 1912, the property was listed for sale with Gundry & Co., a real estate firm of Salt Lake City.  This firm was given the exclusive agency to sell the property for 60 days.  John Anderson was a resident of Idaho, and the business of listing the property for sale was transacted for him by his brother Heber Anderson.  The listing was made orally.  No writing or memorandum of the agreement was made.  Soon after the property was listed Gundry & Co., arranged with Burt & Carlquist Company, plaintiff herein, another real estate firm, to assist it in procuring a purchaser for the property.  It is admitted that at the time this arrangement was made it was agreed that, in case Burt & Carlquist Company should procure a purchaser and succeed in disposing of the property, the commission realized on the sale should be divided between the two firms.  Burt & Carlquist Company had no direct dealings or negotiations with the

Andersons or either of them. J. A. Burt, who represented plaintiff corporation in the several transactions out of which this controversy arose, testified in part as follows: "I never met Mr. Anderson. I didn't meet Mr. Heber Anderson, his brother, until after the controversy, * * * —about a year and a half after the deal was closed." On October 7, 1912, Burt & Carlquist Company took a deposit of $60 from one Harry A. Luff, who at the time executed an instrument in writing in which he agreed to purchase the property and pay therefor $3,760. On October 19th, 12 days after the execution of this agreement, Burt & Carlquist Company, without disclosing its transaction with Luff, or that it had taken an agreement in writing from him to purchase the property, procured the execution by Gundry & Co., of an agreement in writing whereby that company agreed to sell, and Burt & Carlquist Company agreed to purchase, the property for $3,100, payments to be made as follows: "$25.00 on the execution of the contract, $25.00 on or before October 30th, and $2,900.00 on or before November, 1912, and the remaining $150.00 shall be paid to C. E. Marks, * * * to be held by him in trust until such time as John Anderson * * * shall have quieted title" to a certain strip of the land in question containing 19½ square rods. And in case "Anderson is not able to deliver good title by warranty deed to the * * * ground within a reasonable time, then one hundred dollars shall be forfeited" to Burt & Carlquist Company for noncompliance with the contract. In pursuance of this agreement the deeds to the property executed by Anderson were placed in the hands of Mr. Marks, who subsequently delivered them, and received the purchase money for and in behalf of John Anderson, vendor. Marks also received and held the $100 mentioned in the agreement to be held by him until the title to the strip mentioned was quieted and a warranty deed covering it given by Anderson. Burt & Carlquist Company brought suit in the city court of Salt Lake City against Marks to recover judgment for the $100 so held by him, alleging a defect of title to a narrow strip of the land about 13 feet in width on one end of it. Marks answered, alleging that he was a mere stakeholder and not in collusion with either of the parties; that he was in

doubt as to which of the parties was entitled to the money, and asked that he be allowed to pay the money, with interest, into court. This he was permitted to do. John Anderson, by his attorneys, interpleaded as a defendant, and in his answer and counterclaim charged Burt & Carlquist Company and Gundry & Company "with having entered into a false, pretended, and fraudulent agreement" between them on October 19, 1912, and of misrepresenting facts and misleading him, etc., and praying that he be awarded the $100 and interest thereon paid into court by Marks. A trial was had and judgment was rendered in favor of Burt & Carlquist Company. Upon the trial of the cause in the city court John Anderson and Gundry & Company learned for the first time that Burt & Carlquist Company had sold the property to Luff for $3,760 instead of $3,100. Anderson thereupon appealed the case to the district court, and filed in that court, with the consent of the court, his amended answer and counterclaim, claiming judgment against Burt & Carlquist Company for the excess received by that company over and above the $3,100, namely, $660, less $60 which the record shows Burt & Carlquist Company had paid to the vendee, Luff, on account of the alleged shortage of the amount of land actually conveyed. No objection was made in the district court to the amendment. The cause was tried to a jury. The court peremptorily instructed the jury to find on the issues in favor of defendant Anderson and under no circumstances to find for the plaintiff. A verdict was rendered accordingly in favor of defendant Anderson for the $100 and interest thereon paid into court by Marks, and for $660, less the $60, paid by plaintiff to Luff, as hereinbefore stated.

To reverse the judgment entered on the verdict Burt & Carlquist Company prosecutes this appeal.

McCARTY, J. (after stating the facts as above).

One of the grounds upon which the validity of the judgment is assailed by appellant is that the district court exceeded its jurisdiction by permitting respondent Anderson to amend his answer and counterclaim and by rendering judg-

ment thereon for a sum in excess of the amount that the·
city court had jurisdiction to try and determine.

Comp. Laws 1907, section 686x10, provides, so far as ma-
terial here, that city courts "have civil jurisdiction * * * in
actions arising on contract, for the recovery of money only,
if the sum claimed is less than $500." Section 686x17, as
amended by chapter 87, Sess. Laws 1909 (page 186), provides,
so far as material here, that "from all final judgments of a
city court * * * an appeal may be taken by either party, in a
civil case, * * * to the district court of the county, in the
manner and *with like effect* as is now or may be provided by
law for appeals from justices' courts in similar cases, and
from all final judgments in the district courts, rendered upon
such appeals, an appeal may be taken to the Supreme Court
in like manner as if said actions were originally commenced
in the district court." (Italics ours.)

The claim alleged and set forth by respondent Anderson in
his amended counterclaim filed in the district court, and for
which judgment was rendered by that court, was therefore
clearly in excess of the sum which the city court had juris-
diction to try and determine. The question, therefore, arises,
did the district court exceed its jurisdiction by permitting
the filing of the amended counterclaim, trying the issues pre-
sented by it, and rendering judgment thereon for a sum in ·
excess of the amount that the city court had jurisdiction to
try and determine?

Counsel for appellant cite and mainly rely on the case of
*Wheatley* v. *O. S. L. R. Co.,* 49 Utah, 105, 162 Pac. 86. In
that case suit was commenced in the justice of the peace court
to recover judgment for a sum in excess of the        1, 2,
amount that the court had jurisdiction to try and ad-        3, 4
judicate. In other words, the justice of the peace in
that case did not have jurisdiction of the subject-matter of
the action, namely, a sum in excess of $300. In the case at
bar the suit, as commenced and as it was tried in the city
court, was for a sum that was within the jurisdiction of the
court to hear and determine. This case is therefore clearly
distinguishable from the Wheatley Case. The authorities
practically all agree that where a justice of the peace court is

without jurisdiction to hear and adjudicate the subject-matter of an action commenced therein, an appellate court to which the case is appealed does not acquire jurisdiction of the action, even though the appellate court had original jurisdiction of the subject-matter of the action. 24 Cyc. 641; 3 C. J. 366, and cases cited in footnote. It was upon this well-recognized principle of law that the Wheatley Case was ruled and decided by this court. It is also a well-established rule that in cases appealed from an inferior court to a superior court having appellate jurisdiction only, the appellate court acquires only such jurisdiction as the inferior court had. The case at bar, however, does not come within either of the rules mentioned. Here the city court, as stated, had jurisdiction of the subject-matter of the action as the same was commenced and tried in that court. And the district court had original and concurrent jurisdiction with the city court for the recovery of the $100, the subject-matter of the action. It also had original jurisdiction of the claim for $660, the subject-matter of the cause of action pleaded in respondent Anderson's counterclaim. In cases of. this kind the weight of authority holds that where parties on appeal to a court having original jurisdiction of the subject-matter of the action have, without objection, as in the case at bar, submitted their controversy to the court for trial and adjudication, and the cause proceeds to trial and final judgment, they will be held to have waived their right to object to the jurisdiction of the court to which the appeal is taken. *Bingham* v. *Stewart,* 14 Minn. 214 (Gil. 153); *In re Estate of Crawford,* 68 Ohio St. 58, 67 N. E. 156, 96 Am. St. Rep. 648; *Danforth* v. *Thompson,* 34 Iowa, 243; *Randolph Co.* v. *Ralls,* 18 Ill. 29; *Pearson* v. *Kansas Mfg. Co.,* 14 Neb. 211, 15 N. E. 346. See, also, 24 Cyc. 643, and 3 C. J. 368.

This, we think, where such waiver is not in derogation of any statutory or constitutional provision, is a sound and wholesome rule. The cases cited on this point by counsel for appellant are cases which were commenced in justices' courts. The case at bar originated in, and was appealed from, the city court. The question of whether, in view of sections 8 and 9, art. 8, Const. Utah, waiver of this character could legally

be made in the latter court to amendments made therein that would present an issue involving subject-matter in excess of the jurisdiction of justices' courts, is not involved; hence it is not necessary for us to nor do we express an opinion thereon.

Regarding the merits of the controversy, the record shows that when Heber Anderson listed for sale the property in question with Gundry & Co. he stated to Gundry that his brother John Anderson, defendant, would not sell for less than $3,000. Heber Anderson testified on this point in part as follows:

"I told Mr. Gundry that we would not sell for anything less than $3,000.00 net, if that was the best price he could get; * * * that he (John Anderson) wanted to get a better price if he could, * * * but he wanted to sell it, and decided he would take $3,000, if that was the best price he could get."

This testimony was not disputed. The evidence, without any substantial conflict, also shows that at the time Gundry & Co. arranged with the firm of Burt & Carlquist Company to assist in procuring a purchaser for the property it was understood and agreed between these real estate firms that in case Burt & Carlquist Company should procure a purchaser, and the property be sold through its efforts, the "commissions" realized on the transaction would be divided between them; that in pursuance of this agreement Burt & Carlquist Company listed the property for sale, and, as stated in the foregoing statement of facts, on October 7, 1912, entered into an agreement in writing in which Luff agreed to purchase the property for $3,760, and on October 19, 1912, it, without disclosing the deal with Luff, obtained a contract in writing from Gundry & Co., in which that firm agreed to sell, and Burt & Carlquist Company agreed to purchase, the property for $3,100. On this point Gundry, a witness called by plaintiff, Burt & Carlquist Company, testified in part as follows:

"Q. To your knowledge did Mr. John Anderson, prior to the commencement of this suit, know anything about the secret profits made by Burt & Carlquist in the Luff deal? A. Not to my knowledge. I never informed him. I didn't

know myself. I learned the real facts in the case when I heard Luff, the purchaser of this property, on the witness stand giving his testimony. * * * Up to that time I did not know that anything more than $3,100 was being paid for the property. * * * I never made a demand on Mr. Burt for what he made over and above $3,100. * * * We were led to believe that Burt & Carlquist was buying the property, and therefore we could not demand a commission.''

Burt, who was a member of the firm of Burt & Carlquist Company, testified in part as follows:

''I didn't notify Mr. Gundry I had obtained a customer in Mr. Luff. I didn't think it was any of Mr. Gundry's business.'' He further testified: ''I don't think that I showed any papers to Mr. Gundry, Mr. Marks, or Mr. Anderson that showed the exact consideration Mr. Luff was paying for the property. I prepared the deed for Mr. Luff, and placed the consideration at $10. * * * The actual consideration was $3,760. The deed was prepared by me on the 15th day of October, four days before the agreement (referring to the contract that Burt & Carlquist Company obtained from Gundry & Co., herein referred to) was signed by Gundry.''

It therefore clearly appears from the undisputed evidence that Burt & Carlquist Company, during the time it was acting in this matter as the agent of Gundry & Co., succeeded in disposing of the property for $3,760, which was $760 in excess of the minimum price fixed by Anderson. This money, less the commission to which these real estate firms were entitled for making the sale and transacting the business connected therewith, belonged to Anderson.

The authorities practically all agree that, when a real estate agent or broker sells property for a price in excess of that at which it is listed to him by his principal, he is legally and equitably bound to account to his principal for such excess.

In 2 Pom. Eq. Jur. section 959, the author says:

''Equity regards and treats this relation (of principal and agent) in the same general manner, and with nearly the same strictness, as that of trustee and beneficiary. The underlying thought is that an agent should not unite his personal and his representative characters in the same transaction. * * * In dealings without the intervention of his

principal, if an agent, for the purpose of selling property of the principal, purchases it himself, or an agent, for the purpose of buying property for the principal, buys it from himself, either directly or through the instrumentality of a third person, the sale or purchase is voidable.''

And again, in the same section:

''Any *unfairness*, any *underhanded* dealing, any use of knowledge not communicated to the principal, any lack of the perfect good faith which equity requires, renders the transaction voidable.'' (Italics ours.)

In *Holmes* v. *Cathcart*, 88 Minn. 213, 92 N. W. 956, 60 L. R. A. 734, 97 Am. St. Rep. 513, the Supreme Court of Minnesota, in the course of a well-considered opinion, said:

''The principal may authorize his agent to sell or exchange his property, but it does not necessarily follow that the agent, by carrying out the specific instructions given him, fully performs his duty, and is relieved from liability. He is bound to the exercise of the most perfect good faith, and to keep his principal informed of facts coming to his knowledge affecting his rights and interests. If, after receiving instructions to sell property on certain specified terms, the agent learns that other and more advantageous terms can be obtained, it is his plain duty, and he is under every legal and moral obligation, to communicate the facts to the principal, that he may act advisedly in the premises.''

In *Easterly* v. *Mills*, 54 Wash. St. 356, 103 Pac. 475, 28 L. R. A. (N. S.) 952, the Supreme Court of Washington said:

''If a real estate broker sells for a price in advance of that stipulated by his principal, and fails to account to the latter or inform him of the true facts, he becomes liable to his principal for the excess. A broker is not entitled to realize any financial benefit in addition to his stipulated commission as the result of secret negotiations which he conceals from his principal.''

In the case of *Neighbor* v. *Pacific Realty Ass'n*, 40 Utah, 610, 124 Pac. 523, Ann. Cas. 1914D, 1200, Mr. Chief Justice Frick, in the course of an elaborate and carefully prepared opinion, speaking for this court, says:

''Appellant was also required to inform the Daileys fully of all matters that might affect them in making a sale of the property, including any offers appellant had received for the same. The law does not allow the agent, who also has a right to purchase, to wait until some one makes an offer of an amount in excess of the agreed pur-

chase price, and then elect to purchase the property at the lesser price without informing the owner of the higher offer, and, after the agent has obtained the consent from the owner to buy the property, then immediately sell it for the higher price as his own property. Such conduct is condemned by all the authorities, and under such circumstances equity will require the agent to account for the full purchase price to the owner unless such owner, with full knowledge of all the facts and circumstances, has ratified the transaction.''

Counsel for Burt & Carlquist Company earnestly insist that there was no privity of contract between the firm and Anderson, and it is therefore not legally bound to account to Anderson for the excess profits it made on the transaction in question, and hence Anderson cannot maintain the cause of action set forth in his crosscomplaint wherein he seeks to recover for the excess of profits mentioned. We do not agree with counsel. Anderson, by amending his counterclaim and seeking to recover the excess—secret—profits realized by, and in the hands of, Burt & Carlquist Company, ratified the act of Gundry & Co. in making that firm an agent or subagent, as the case may be, to sell the property, and also ratified the sale of the property to Luff. Furthermore, Anderson was the victim, and the only victim, of the fraud sought to be perpetrated by Burt & Carlquist Company by withholding and appropriating to its own use the excess—secret—profits which were realized from the sale of his property. He is the ''real party in interest.'' No case has been cited, nor do we think one can be found, that holds, under such circumstances, the owner of the fund cannot successfully maintain an action to recover it against the party who perpetrated the fraud and who has actual possession of the money.

In *Burke* v. *Bours*, 92 Cal. 108, 28 Pac. 57, a case involving a similar question, the Supreme Court of California said:

''There cannot be the slightest question but that Bours, in the transaction of finding a purchaser for this real estate, was either the agent or subagent of Arguello, or the agent of Faulkner, Bell & Co.; and as the law reads, his position from either standpoint is fatal to his claims, whenever and wherever judicially viewed by a court of equity.''

Further along in the opinion the court said:

''If we assume that defendant was simply the agent of Faulkner, Bell & Co. in this matter, then he is equally unfortunate in resting upon

Appeal from Fourth District.

unstable ground. If the purchase in this case had been made by Faulkner, Bell & Co., as we have seen, no court would countenance it. The same principle must necessarily apply to a purchase made by their agent; no substantial distinction can be discerned in the status of the two parties. His duties and obligations to Arguello are required to fill the same measure as is demanded of his employer, and such should emphatically be the requirement in this case.''

We are of the opinion, and so hold, that the court did not err in instructing the jury that their verdict must be in favor of Anderson and against Burt & Carlquist Company, leaving to their judgment the amount to which Anderson, under the evidence, was entitled.

The judgment is affirmed; appellant to pay costs.

· FRICK, C. J., and CORFMAN, THURMAN, and GIDEON, JJ., concur.