## J. J. Nartzik, Appellee, v. Fred C. Ehman, Appellant.

## Gen. No. 19,946.

1. CREDITORS' SUIT, § 40*—*when receiver may be appointed.* A receiver for property may properly be appointed in a suit before the defendant has answered, where the complainant can satisfy the chancellor that he has an equitable claim to the property and that the receiver is necessary to preserve it from loss, or where a clear case of fraud is shown, or of imminent danger to the property, and such procedure is especially proper in cases of creditors' bills in aid of the enforcement of judgments.

2. RECEIVERS, § 3*—*what is nature of receiver.* A receiver is an indifferent person between the parties, appointed by the court, and on behalf of all parties, to receive the thing or property in litigation pending the suit.

3. RECEIVERS, § 18*—*when may take possession.* Where the assets are openly visible, the receiver can at once take actual possession, but where their character, amount and whereabouts are unknown, a court of chancery may require a defendant to appear before it and submit to an examination.

4. APPEAL AND ERROR, § 1416*—*when findings of master are supported by evidence.* Evidence *held* sufficient to support findings of fact of a master and his recommendations even though a defendant appeared as a witness and specifically denied the truth of the charges against him.

Appeal from the Superior Court of Cook county; the Hon. WILLIAM E. DEVER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913. Affirmed. Opinion filed December 31, 1914. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** This was a bill in the nature of a creditor's bill in the Superior Court of Cook county, filed November 6, 1912, by J. J. Nartzik, appellee, a judgment creditor, hereinafter called the complainant, against C. Ehman and Company, a corporation, the judgment debtor. The bill named as codefendants Charles Ehman, president of the said corporation, Fred C. Ehman, a former treasurer of said corporation, Adolph C. Ehman, a former secretary of said corporation, Alma B. Burk-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

hardt, Fritz Goetz and Albert Goetz. Fred C. Ehman, appellant, is the only defendant that is interested in this appeal, and he will be hereinafter referred to as the defendant. The bill, in substance, alleges that on June 22, 1912, complainant recovered a judgment in the Municipal Court of Chicago for $2,352.14 against said corporation; that execution issued to the sheriff was returned wholly unsatisfied; the return showing no property found; that the said corporation has property which it keeps concealed or to which the title is held in trust; that certain of its property was fraudulently transferred; that the persons to whom such fraudulent transfers were made are the codefendants named in said bill; that all of said property (naming it in detail) is in the name of or in the control of said codefendants, but equitably belongs to said corporation. On motion of the complainant, on November 7, 1912, a receiver was appointed and an order entered directing that the principal defendant assign, transfer and deliver to said receiver in advance, under the direction of the master in chancery named by the court, all such property; that it deliver to said receiver in like manner, all bills, notes, contracts, books of account, etc.; and it was further ordered that the cause be referred to a master in chancery, to examine the principal defendant, codefendants, officers or agents of said corporation, and such other witnesses as might be produced before said master, concerning things in action, equitable interests and effects of the principal defendant, and report his findings to the court, together with his conclusions thereon, and that the defendant, C. Ehman & Company, its officers and agents and the other defendants shall appear from time to time when summoned to do so by the master, and produce books and accounts and submit to examination. On November 12, 1912, before answer was filed by any of the defendants, hearing on the said reference was had before the master and thereafter he made the following re-

port of his findings and recommendations; that C.
Ehman & Company was an Illinois corporation doing
business in the city of Decatur, manufacturing veneered
doors; that Charles Ehman was president of the com-
pany; that Adolph C. Ehman was secretary; that Fred
C. Ehman was treasurer; that Charles Ehman was the
father of Adolph C. and Fred C. Ehman; that the
checks drawn by the company prior to January 7, 1911,
were signed by Charles Ehman, president, and Fred C.
Ehman, treasurer; that checks signed by    either
Charles Ehman or Fred C. Ehman were recognized by
the banks; that on January 7, 1911, the plant of the
company, including machinery, materials, buildings,
books of account, papers, insurance policies, deeds,
notes, etc., were destroyed by fire; that prior to the fire
the assets of the judgment debtor over and above its
liabilities were $150,000; that the judgment debtor car-
ried $128,000 fire insurance; that subsequent to the
fire there was collected by the judgment debtor or its
officers on the fire loss, the sum of $111,000; that at the
time of the fire the bills receivable of the company
amounted to from $40,000 to $60,000; that the books
of the company were destroyed by the fire; that a new
set of books was made; that the new books show bills
receivable amounting to $30,000; that since the fire
the greater part of that amount has been collected by
the principal defendant or its officers; that prior to the
fire the total indebtedness, including notes held by the
banks and bills payable, did not exceed $40,000; that a
statement made September 1, 1910, showing assets
and liabilities of the principal defendant, showed a
total indebtedness of $33,495.71; that the testimony of
Fred C. Ehman, treasurer, was that in January, 1911,
the indebtedness might be a little but not very much in
excess of that sum, but that the indebtedness would
not in any event exceed $40,000; that all claims except
two against the judgment debtor have been paid since
the fire, and that one of these is the judgment of the

complainant; that both of the claims were disputed; that from January 2, 1911, until the first of May, 1911, there was deposited in the Citizens National Bank of Decatur to the credit of the judgment debtor a sum in excess of $82,000, and the said account was subject to checks signed by either Charles Ehman, president, or Fred C. Ehman, treasurer; that the amount deposited in the Monroe National Bank of Chicago, where deposits were made subsequent to the fire, does not appear, nor does it appear what amount has been collected from the outstanding accounts receivable; that it is admitted that there was $111,000 collected from the insurance, and it is shown that $82,000 of that sum was deposited in the Citizens National Bank of Decatur; that, therefore, there would necessarily be in the neighborhood of $29,000 of insurance money deposited in the Monroe National Bank of Chicago, or elsewhere; that of the $30,000 accounts receivable that existed at the time of the fire and which appear upon the new books of the judgment debtor that were prepared subsequent to the fire, such of these accounts as had not been collected were turned over to Albert Goetz for collection and that the total amount he collected from such accounts was $882.97; that it is apparent that a large portion of the $30,000 of the accounts receivable had been collected prior to the time certain of such accounts had been turned over to Mr. Goetz, but the amount collected does not appear; that Fred C. Ehman testified that on April 4, 1911, there was a meeting in Decatur of himself, his father, and his brother, Adolph C. Ehman, who were officers and directors of the judgment debtor, and that it was then resolved that the affairs of the judgment debtor be wound up and the inventory business of the judgment be turned over to C. Ehman for his attention, and that thereafter he, Fred C. Ehman, gave little attention to the affairs of the judgment debtor; that subsequent developments, however, as shown by the evidence of

the several witnesses as well as by the admissions of Fred C. Ehman, disprove this statement; that it appears that certain garnishment proceedings had been instituted against the judgment debtor in Mississippi, "and that some time in the month of July, 1911, Fred C. Ehman was instrumental in supplying a bond with the Continental & Commercial Bank as trustee, indemnifying the various insurance companies against the said garnishment proceedings, and that thereafter the various insurance policies that had been affected by the garnishment proceedings were paid;" that it also appears that subsequent to the said date, April 4th, Fred C. Ehman sold or was instrumental in selling a lot of doors, aggregating a thousand or more, to one Krumhaar for which he received $900; that it also appears that in August, 1912, he collected an account of $300, and at other times made trips to Philadelphia, New York, Jersey City, Trenton, Louisville and divers other places, for the purpose of looking after the collection of other accounts; that in addition to all these facts, Charles Ehman, president of the judgment debtor and father of Fred C. Ehman, testified that Fred C. Ehman had charge of the collection of all the insurance and the payment of all the bills payable, and that the funds deposited in the Citizens National Bank of Decatur and the Monroe National Bank of Chicago were subject to the check of the said Fred C. Ehman; that Albert Goetz testified that Fred C. Ehman was the only man who knew anything about the affairs of the judgment debtor; that whether the affairs of the judgment debtor subsequent to April 4, 1911, were turned over to C. Ehman, and the funds which had been collected, disbursed by him, or whether Fred C. Ehman had charge of the funds that had been collected from the insurance companies and outstanding accounts and disbursed by him becomes merely a question of veracity between Fred C. Ehman, the son, and C. Ehman, the father; that C. Ehman is a man approximately seventy

years old, whose manner upon the witness stand and whose conduct and appearances impressed the master that he was truthful and sincere in the testimony he gave; that but one conclusion is possible in weighing the testimony of C. Ehman as against that of Fred C. Ehman and the various circumstances in evidence, the activity of Fred C. Ehman subsequent to April 4th, in attending to the affairs of the judgment debtor, his familiarity with the details of all the business interests, as well as the outstanding accounts, leads to the inevitable conclusion that Fred C. Ehman was the guiding spirit of the judgment debtor, C. Ehman & Company, and that he had charge and supervision of the funds of the judgment debtor, received the insurance for the judgment debtor and the bills payable to the judgment debtor, and whatever disbursements have been made were made by him. By his own evidence it is impossible that he could have disbursed legitimately, in behalf of the judgment debtor, more than $40,000 of the sums which he received, and that he would necessarily have in his possession $71,000 from the insurance collected, entirely independent of the further item of $5,000 that was paid the judgment debtor for salvage subsequent to the fire and the sum that was collected, subsequent to the fire, from the outstanding accounts; that C. Ehman, the father, testified positively that he never received from the judgment debtor, subsequent to the time of the fire, an amount to exceed $1,500; that the master finds from the evidence and the circumstances in evidence that his statement in that regard was true. The master further found:

"11. I further find that on the 3rd of August, 1912, co-defendant Fred C. Ehman collected from George Foster of Dayton, Ohio, the sum of $300 which was due the judgment debtor, and that that amount belongs to the judgment debtor and should be turned over to the receiver.

"12. I further find that co-defendant Fred C.

Ehman has in his possession at the plant of F. C. Ehman & Company, No. 1638 Clybourne avenue, Chicago, Illinois, a lot of doors that belong to C. Ehman & Company, and which should be turned over to the receiver.

"12.    I further find from the evidence that co-defendant, Fred C. Ehman, in April, 1911, (shortly subsequent to the fire) went into business in Chicago as a money lender, and he has testified in these proceedings that he loans as high as $70,000 at a time. It also appears from the evidence that his salary with C. Ehman & Company was terminated on or about April 4, 1911, and that prior to that time it had been $200 per month.

"13.    I further find from the evidence that co-defendant, C. Ehman, has no property, real or personal, and so far as it appears from the evidence, his sole means of support is the sum of $50, being payments upon the purchase price of property that he held in Chicago, together with small payments from a life insurance policy.

"14.    I further find from the evidence and exhibits in evidence, that the judgment upon which this proceeding was instituted was $2,352.14, and plaintiff's costs thereon was $37.40; that said judgment was entered on the 22nd day of June, 1912, in the Municipal Court of the City of Chicago; interest on said judgment from June 22nd to December 22nd, 1912, is $58.80; costs of the present proceeding amounting to $500, approximately, including Master's fees and stenographer's fees, but exclusive of receiver's fees, makes a total of approximately $2,948.14.

"RECOMMENDATION.

"I recommend that an order be entered herein, directing the said Fred C. Ehman that he deliver to the receiver the sum of $300 that was collected by him from George Foster.

"I also recommend that he turn over to the said receiver, all of the doors in his possession at Clybourne avenue, at the plant of F. C. Ehman & Company, or elsewhere.

"I also recommend that he be ordered to turn over

to the said receiver such additional sum in currency as will be sufficient to satisfy in full the said judgment entered in the Municipal Court of Chicago on the 22nd of June, 1912, in favor of J. J. Nartzik, against C. Ehman & Company, a corporation, and costs thereon, including the costs of this proceeding, being in the aggregate approximately $2,948.14.

"All of which is respectfully submitted.

"Dated Chicago, December 23rd, A. D. 1912.

CHARLES J. TRAINOR,
Master in Chancery of the Superior
Court of Cook County."

The defendant's exceptions to the master's report were overruled and the court entered the following order:

"This matter coming on to be heard on this 20th day of January, A. D. 1913, upon notice to all parties, and the court being fully advised in the premises, and having before it the report of the Master, together with the evidence declared before said Master, and being fully cognizant of the condition of things finds:

"First, that it has jurisdiction of the parties hereto, and subject matter hereof.

"Second, that the Master's report is correct and proper in all respects, and the Master's findings are true.

"Third, that an order should be entered in accordance with the findings of the Master.

"Wherefore, it is ordered and adjudged that the Master's report be and the same hereby is confirmed and approved in all things, and the exceptions thereto of Fred C. Ehman are each hereby severally overruled.

"It is further ordered that Fred C. Ehman, defendant, do turn over to Wm. F. Zibell, receiver herein, the sum of $2,948.14, and do also turn over to the said Wm. F. Zibell all doors now in his possession, and located at the plant of Fred C. Ehman & Company, a corporation in Chicago, Illinois; that he further turn over the sum of Three Hundred ($300) Dollars in addition, all within the period of ten days in accordance with the finding of the Master."

To reverse this order, the defendant prosecutes this appeal.

LIPSON & LEVY and HENRY S. BLUM, for appellant.

EASTMAN & WHITE, for appellee; RALPH R. HAWXHURST, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

The defendant contends, and argues at some length, that the order in this case is an appealable one, but as the complainant appears to concede the correctness of this contention, we have not deemed it necessary to pass upon the question.

The next contention of the defendant can, perhaps, be best stated by a quotation from his brief: "There was a controversy here which should go to a hearing. The court should obtain jurisdiction of the parties, issues should be formed upon the pleadings and a trial should be conducted in the regular and orderly course of procedure.  Instead, the regular and orderly course of procedure was suddenly and ruthlessly wiped out. * * *  Here in this finding and on the decree based thereon we have every essential of an ultimate finding and decree.  Nothing to be determined by an ultimate hearing was not determined here, and it was determined without jurisdiction, without pleadings, and without a defense or opportunity for a defense by the defendant.  * * *  The issues should be formed, a final reference to a master should be made upon the ultimate issues of the case, the two sides should marshal their forces and produce their witnesses and testimony.  *The case should be heard.*  * * *  We have not insisted that this question is one strictly of jurisdiction.  That may be a point of terminology.  It is entirely satisfactory to us to have it considered merely as a question of common sense in practice,

procedure and substantive law. The purpose of a receivership and the preliminary reference is to main-tain the *status quo,* not to alter it. But behold, before the facts can be developed a decree is entered, upon which execution against the property, or attachment against the body of this defendant can be issued. * * * We believe the question is jurisdictional. But we say, in any event *it is error."* The defendant further contends, in support of his present proposition, that, even if it be conceded that there was evidence introduced before the master tending to establish the charges made by the complainant against him, still, in view of the fact that the defendant testified before the master and denied the truth of the charges, the order complained of could not properly be entered against him, until after the final hearing of the case; that the chancellor, upon the report of the master, at most, might perhaps have properly issued an injunction against the defendant to restrain him from disposing of any moneys or property belonging to Ehman & Company.

The power of the court to appoint a receiver and to place in his custody the property in controversy, before the defendant has answered, has become a well established practice in this country, in cases where the complainant can satisfy the chancellor that he has an equitable claim to the property in controversy, and that a receiver is necessary to preserve it from loss, or where a clear case of fraud is shown, or of imminent danger to the property, unless the relief is granted. "If the emergency shown is such as to render it essential to justice that a receiver should be immediately appointed, it may be done before answer, since to delay the relief might entirely defeat the object sought by the application. The practice is especially salutary in cases of creditors' bills in aid of the enforcement of judgments, and in this class of cases receivers are almost uniformly granted before answer. While the practice of appointing receivers

before answer, in cases of emergency, is thus shown to
be well established and generally followed by courts
of equity in this country, yet the grounds which will
induce the court to interfere at this stage of a cause
must be very strong, and there must be clear proof
of fraud, or of immediate danger to the property unless
it is taken into the custody of the court." High on
Receivers, secs. 105, 106. The practice of appointing
receivers *pendente lite* is well established in this State,
and the courts are not required to wait until the de-
fendant to the bill has gone through the process of
pleading before the appointment may be made. *Rail-
ton v. People,* 83 Ill. App. 396; *Railton v. People,* 85
Ill. App. 384; *Chicago Title & Trust Co. v. Chapman,*
132 Ill. App. 55; *Baker v. Backus' Adm'r,* 32 Ill. 79;
*Daley v. Nelson,* 119 Ill. App. 627. "The power of ap-
pointment (*pendente lite*) is usually invoked either
for the prevention of fraud, to save the subject of liti-
gation from material injury, or to rescue it from
threatened destruction." High on Receivers, sec. 11;
*Baker v. Backus' Adm'r, supra.* "The great object is
to secure the property or thing in controversy, so that
it may be subjected to such order or decree as the
court may make in the particular case." *Mays v.
Rose,* Freem. (Miss.) 718. Where a defendant is in
the possession and enjoyment of the property in con-
troversy, equity always proceeds with extreme caution
in taking possession of the property by its receiver,
but in all such cases a large discretion must be vested
in the chancellor, and the question as to whether or
not this discretion has been properly exercised must
be determined by the particular facts of each case.
Before answer there must be clear proof of fraud, or
of imminent danger to the property, before the court
through its receiver will take custody of the same.
High on Receivers, secs. 191-198. "Courts of equity
have the power upon appointing receivers, to order
them to take possession of the property which is in-

volved in the controversy, and when such possession
is withheld by persons who are parties to the suit, or
by others who are claiming under such parties, with
notice of the appointment of the receiver, the court
may interfere in a summary way and order the de-
livery of the property, and may enforce its order by
writ of assistance, or attachment." 34 Cyc. of Law
and Procedure, p. 204. "Where the assets are openly
visible, the receiver can at once take actual possession,
but where their character, amount and whereabouts
are unknown, the power of the court is necessarily
invoked to aid the receiver in the discovery and obtain-
ing such possession. This is done by an order requiring
the defendant and others to appear before the master
and submit to an examination touching the loca-
tion, amount and character of the property and effects
to the possession of which the receiver is entitled."
Henderson on Chancery Practice, p. 360. A court of
chancery may, of course, require a defendant to ap-
pear before it and submit to a like examination.

The defendant strenuously contends that the de-
cretal order in this case is not in any way preliminary
in its nature; that it, by its very wording, "makes an
ultimate disposition of the controversy between the
corporation, through its receiver, on the one hand, and
Fred C. Ehman on the other hand, on the question
whether Fred C. Ehman received any of the company's
money which he failed to disburse. * * * In other
words, the only controversy in which Fred C. Ehman
is interested, viz., Has he the company's money? they
believe to be preliminary, and expect to dispose of pre-
liminarily, without according him the rights of a party
litigant, or the benefit of the system of pleading, prac-
tice, procedure or evidence to which every litigant is
entitled." We think the defendant misconceives the
effect of the interlocutory decretal order entered in
this case. "A receiver is defined to be an indifferent
person between the parties, appointed by the court,

and on behalf of all parties, and not of the complainant or one defendant only, to receive the thing or property in litigation, pending the suit." *Baker v. Backus' Adm'r, supra; St. Louis & S. Coal & Mining Co. v. Sandoval Coal & Mining Co.,* 111 Ill. 32; *Railton v. People, supra.* The possession of the property in question by the receiver is the possession of the court, held equally for the greater safety of all the parties concerned. High on Receivers, p. 19; see also sec. 15. The receiver acquires no title to the property by the appointment, but only the right of possession as the officer of the court. He is a mere custodian pending the litigation. The parties who have the title at the time of the appointment retain it. "The object of the appointment is to secure the property pending the litigation, so that it may be appropriated in accordance with the rights of the parties as they may be determined by the judgment in the action." *Heffron v. Gage,* 149 Ill. 182. To the same effect is *Nevitt v. Woodburn,* 190 Ill. 283.

The defendant strenuously contends that the master's findings of fact are not justified by the proof, and that the order in question was not warranted on the merits of the case. We have examined with care the evidence heard before the master, and we are satisfied that there is no merit in the defendant's present contention. In our judgment, the master's findings are fully warranted by the proof. There is no force in the defendant's contention that because he appeared before the master as a witness and, in answers to certain questions, specifically denied the truth of the charges made by the complainant against him, that this fact alone precluded the master from making findings of fact against him, and the chancellor from entering the order in question. After a consideration of the entire evidence heard before the master and of the law governing the case, we are satisfied that the chancellor acted justly and properly in entering the order in question in this case.

The order of the Superior Court of Cook county will be affirmed.

*Affirmed.*