### WALLING v. POULSEN.

1. PRINCIPAL AND AGENT—ADMISSIONS—CREATION OF RELATION—RATIFICATION.

A broker who sends an employé to the owner of land which he has listed, and secures an option through the untrue representations of the employé, adopts the acts of the latter as his own by acting on the option.

2. SAME—BROKER OF REAL ESTATE—CREATION OF AGENCY.

Testimony of the plaintiff's witnesses, although it was contradicted by defendant, that defendant stated he guessed he could afford to list real property of the plaintiff without an exclusive right of sale, previously refused by the owner, tends to support a verdict finding the existence of the relation of principal and agent.

3. SAME—RATIFICATION OF AGENT'S ACTS—FIDUCIARY RELATIONS—PERSONAL PROFITS OF AGENT.

The owner of real property, whose agent sells at a greater price than he accounts for, may elect to affirm the transaction, and recover a judgment at law for the value of the excess obtained in the form of mortgage at six per cent. on adequate security, and need not await the maturity of the instrument.

4. SAME—VALUE—MORTGAGES.

Judicial notice will be taken that a mortgage for $100 at six per cent. interest on land worth $500 is the equivalent of cash.

5. SAME—EQUITY—REMEDIES FOR ACCOUNTING—EXCLUSIVENESS OF EQUITABLE REMEDY.

> The existence of a remedy in equity to impress proceeds of the sale of realty by a broker with a trust in favor of the principal does not bar an action of assumpsit for the value of such proceeds.

Error to Calhoun; North, J. Submitted February 8, 1910. ( Docket No. 50.) Decided March 19, 1910.

Assumpsit by Earl G. Walling and Elizabeth Walling against Alfred E. Poulsen for money had and received. A judgment for plaintiffs is reviewed by defendant on writ of error. Affirmed.

*J. M. & J. L. Powers*, for appellant.

*O. S. Clark*, for appellees.

BROOKE, J. Plaintiffs were owners of a lot in Battle Creek, and defendant is a real estate dealer in the same city. In March, 1907, plaintiffs, intending to leave the city, and desiring to dispose of all their property therein, gave to defendant a list, in which was included the lot in question. Upon that occasion defendant endeavored to secure from plaintiffs a contract for the exclusive handling of the property, but this the plaintiffs declined to give, whereupon plaintiffs testify defendant said:

" Well, this is a pretty good line of property, and I guess I can afford to list it without a contract for exclusive sale."

Defendant denied making this remark, and testified that after making a list of plaintiffs' property, he said, " Well, we will see," and left the house, and upon reaching his office threw the memoranda he had made into the wastebasket. A few days later he showed a lady (a prospective purchaser) over the Walling house. He at no time advised the plaintiffs that he had concluded not to handle their property. On September 26, 1908, defendant sent one Marshall, an employé in his office, to plaintiffs with instructions to secure from them an option upon

the lot in question to himself, if possible. After considerable negotiation Marshall secured the option at the price of $400. Thereupon defendant sold the lot to one Price for $500, receiving $400 in cash and a mortgage for $100 upon the lot, which was made to run to his wife at his request. The deed was made directly to Price by plaintiffs, at defendant's request. Upon learning that defendant had actually received $100 more for the lot than he had paid over to them, plaintiffs (after demand) sued in assumpsit to recover that amount. Judgment having been rendered against defendant, he brings the case here by writ of error.

The first 24 assignments of error relate to the admission of testimony touching statements made by Marshall, tending to show that he was acting as agent for defendant. It becomes unnecessary to consider these assignments, because defendant himself testified that he sent Marshall to plaintiffs as his agent, and that he acted upon the information (option) secured by Marshall from plaintiffs at his request.. Under these circumstances it is elementary that defendant is bound by any statements made by Marshall in the course of the transaction.

Whether, at the time defendant secured the option from plaintiffs, he was their agent, and therefore bound to disclose to them all the facts and circumstances within his knowledge affecting their interest, was a question of fact to be determined by the jury. Upon this phase of the case we have examined the charge with care, and find that the instructions given were unusually full and careful; that they correctly state the law, and clearly protect defendant's rights. The relationship of principal and agent being established by the verdict of the jury, it follows that defendant could not deal with the property of his principals, for his individual benefit, without a full disclosure to them of all the facts within his knowledge which might affect their judgment, and an unequivocal severance of the fiduciary relations theretofore existing. *Moore* v. *Mandlebaum*, 8 Mich. 433; *People* v. *Overyssel Town-*

*ship Board*, 11 Mich. 222; *Hannan* v. *Prentis*, 124 Mich. 417 (83 N. W. 102), and cases cited. See, also, 31 Cyc. p. 1430 *et seq.*, and cases cited.

Defendant urged upon the trial court, and still insists, that a verdict should have been directed in his favor for the reason that, the plaintiffs having elected to affirm the contract made by him, and accept and retain the $400 (being all the actual money defendant received), they cannot maintain an action at law for the balance represented by the mortgage until that balance is actually received by defendant. This theory would postpone plaintiffs' right of action for two years at least, and for such further period as defendant chose to extend the time of payment of the mortgage. We think the court may take judicial notice of the fact that a 6 per cent. mortgage for $100, upon vacant land selling for $500, is the equivalent of, and readily convertible into, cash.

As suggested, plaintiffs might have had recourse to the equity side of the court, to have the holder of the mortgage declared to be a trustee for them, but this fact does not prevent them from maintaining their action upon the law side of the court. In *Moore* v. *Mandlebaum, supra,* the court said:

"But it is objected that the plaintiff's remedy is in equity, and that this is an attempt to convert the action of assumpsit into a bill in equity. We do not mean to say that the plaintiff could not have sustained a bill in equity upon the facts of this case. A court of equity might sustain such a bill for the purchase money as founded upon the notion of a trust, and the plaintiff might be entitled to a discovery. * * * But if, for want of such discovery, this action is less advantageous to the plaintiff, that can be no ground of complaint on the part of defendant. The plaintiff may waive his right to discovery, and take upon himself the risk of being able to prove his case without it. We understand the law to be well settled that the action of assumpsit for money had and received is essentially an equitable action, founded upon all the equitable circumstances of the case between the parties; and, if it appear from the whole case that the

defendant has in his hands money which, according to the rules of equity and good conscience, belongs or ought to be paid to the plaintiff, he is entitled to recovery, and that as a general rule, where money has been received by a defendant under any state of facts which would in a court of equity entitle the plaintiff to a decree for the money, when that is the specific relief sought, the same state of facts will entitle him to recover the money in this action."

In this case the principle laid down in *Beardslee* v. *Horton*, 3 Mich. 560, was followed and affirmed. The court has since frequently cited and approved it. See *Harty* v. *Teagan*, 150 Mich. 75 (113 N. W. 594), and cases there cited.

The other errors assigned have been considered, but we find them to be without merit.

The judgment is affirmed.

Montgomery, C. J., and McAlvay, Blair, and Stone, JJ., concurred.