HERMANN v. HALL et al.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1914.)

No. 2371.

PRINCIPAL AND AGENT (§ 69*)—PURCHASE OF PROPERTY BY AGENT—SUIT TO SET ASIDE.

Complainant and his wife authorized defendant, as their agent, to sell certain land of the wife for $4,000, and sent him a power of attorney to convey the same. He made a sale to two purchasers for $4,400, took their note for $100, to apply on the price until the title was examined and approved, and gave them a receipt describing the land and terms of sale. Meantime they decided to form a syndicate to take the land, but when the time came to make the payment one member, who was to take a one-twelfth interest, failed to do so, and at the solicitation of one of the purchasers defendant took his place. The price received was the full value

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the land at the time. *Held*, that the rule that a purchase by an agent is voidable, regardless of the price paid, had no application; that when the purchasers gave their note and took the receipt a binding contract of sale was made, and defendant's agency substantially ended; that defendant's purchase was not from his principal, but from the original purchasers; and, in the absence of actual fraud, complainant was not entitled to have the sale set aside in equity.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 130–145; Dec. Dig. § 69.*]

Appeal from the District Court of the United States for the District of Oregon; R. S. Bean, Judge.

Suit in equity by Christian Hermann against John F. Hall and others. Decree for defendants, and complainant appeals. Affirmed.

Suit in equity by plaintiff to quiet title to certain real property situated in Coos county, Or., and to set aside and have declared null and void, on the ground of alleged fraud, certain deeds purporting to convey the legal title to the land in controversy to the defendants.

On November 7, 1903, the plaintiff, Christian Hermann, and his wife, Dora Hermann, residents of the German Empire, made, executed, and delivered to the defendant John F. Hall a power of attorney, wherein the latter was appointed their true and lawful attorney, and as such, among other things, was empowered to sell and dispose of certain properties owned by Dora Hermann, situated in the state of Oregon, included in which was the property involved in this suit, more particularly described as the N. E. ¼ and lot 2 and the W. ½ of the S. E. ¼ of section 36, township 25 S., of range 13 W. of the Willamette meridian. The defendant entered upon his duties as such attorney and continued to act in that capacity from the date of his appointment until the death of Dora Hermann on the 18th day of September, 1905. On that date, Christian Hermann, the plaintiff in this suit, as the sole heir at law of the decedent, became, under the laws of the German Empire, the owner of and entitled to the possession of all property of which his wife was seised at the time of her death.

Some time in the month of May, 1905, the defendant, as the attorney and agent of Dora Hermann and her husband, under the power of attorney executed by them to him, entered into negotiations with Henry Sengstacken and L. D. Smith for a sale of the property above described to them. It appears from certain correspondence exchanged between the defendant and his principals that he had been authorized to sell the land for $4,000. No agreement for a sale of the property was reached between the defendant and Sengstacken and Smith until May 17, 1905, on which date the transaction was closed; Sengstacken and Smith agreeing to pay for the property the sum of $4,400. The purchasers gave to the defendant their promissory note for the sum of $100, payable in 10 days after date, to be applied on the purchase price of the property, and the defendant gave to the purchasers a receipt therefor. The receipt was not introduced in evidence, for the reason that it could not be found; but Sengstacken testified that it described the lands and the terms of the sale. The testimony of the parties tended to show that the terms of the sale were that one-half of the purchase price should be paid in cash, and the remainder in one year; the unpaid balance to draw interest at the rate of 6 per cent. per annum and to be evidenced by a note secured by a mortgage on the property. The cash payment of one-half of the purchase price was to be made, and the deed, mortgage, and note delivered, after the purchasers had had a reasonable time within which to examine the title to the land.

It also appears from the testimony (which in all substantial respects is without conflict) that after agreeing to purchase the property Sengstacken and Smith proceeded to interest other persons in the transaction, and that some time in the month of July, 1905, Sengstacken informed the defendant that he was going to take some other parties in with him and was going to form a

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

syndicate for the purchase of the land. The syndicate, as originally formed, together with the interest which each member thereof was to have in the property, was as follows: Henry Sengstacken, three-twelfths; L. D. Smith, three-twelfths; Stephen C. Rogers, two-twelfths; J. J. Clinkinbeard, two-twelfths; D. L. Rood, one-twelfth; and Herbert Rogers, one-twelfth.

The title to the property having been passed upon satisfactorily by the attorneys for the purchasers, August 30, 1905, was fixed upon as the date for making cash payment of one-half of the purchase price and delivering the deed, mortgage, and note. On the morning of that date, Herbert Rogers, who had agreed to take a one-twelfth interest in the property, informed Sengstacken that he had "changed his mind" about taking an interest for the reason that he did not consider it a good investment. During the morning of that day S. C. Rogers and Clinkinbeard went to the office of the defendant, and each paid to him the sum of $366.65, representing their proportionate interests in one-half of the purchase price of the property. Later in the day Sengstacken went to the office of the defendant and informed him that Herbert Rogers had refused to take the one-twelfth interest in the property. He then said to the defendant: "What's the matter with you taking his interest? You are getting a commission out of this for selling this land, and you might as well take this to close it up." The defendant replied that he would talk the matter over with his brother, James T. Hall, who was also his law partner. Sengstacken then paid to the defendant the sum of $1,466.70, which represented his three-twelfths interest in one-half of the purchase price, the three-twelfths interest of Smith, and the one-twelfth interest of Rood. The next morning Sengstacken again saw the defendant, and was informed by the latter that he had talked the matter over with his brother, and that they had concluded that they would purchase the one-twelfth interest in the property which Herbert Rogers had refused to take.

Sengstacken testified that he had no knowledge or notice of any kind, prior to August 30, 1905, that the defendant was to take any interest in the property. Smith testified to the same effect; and Stephen C. Rogers, D. L. Rood, Herbert Rogers, and J. J. Clinkinbeard testified that they did not know and were not informed that the defendant had taken an interest in the property for periods varying from one month to one year after the agreement had been consummated and the one-half of the purchase price paid in cash.

It was agreed that the title to the property should be placed in the name of the Title Guarantee & Abstract Company, and on August 31, 1905, the defendant, as attorney, acknowledged and delivered to the Abstract Company, as trustee, a deed for the property involved in this suit. It appears from the testimony that a note, together with a mortgage on the property, were executed by the Abstract Company. Neither the note nor the mortgage was introduced in evidence, and the record is silent as to the actual date of their execution and delivery.

On or about October 2, 1905, the Abstract Company issued a certificate to each of the purchasers, including the defendant, evidencing their respective interests in the land held in trust by it for them. Various assignments of the interests held by the respective parties were subsequently made, whereby Sengstacken, Smith, and one Z. T. Siglin acquired all of the interests of the other purchasers. The parties last named then caused to be organized and incorporated, under the laws of the state of Oregon, the Eastside Land Company. On July 22, 1911, the Title Guarantee & Abstract Company conveyed all of its right, title, and interest in and to the property, as trustee, to the Eastside Land Company, and the latter company is now the owner and holder of the property, with the exception of certain lots and blocks which have been conveyed to the various parties named as defendants in this suit.

Robert J. Upton and St. Rayner & St. Rayner, both of Portland, Or., for appellant.

C. R. Peck and C. A. Sehlbrede, both of Marshfield, Or., for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The plaintiff bases his right to the relief prayed for in his complaint upon the rule, laid down by the text-writers and adhered to in many authoritative decisions, that if an agent in the sale of property of his principal purchases it himself, or any interest therein, either directly or through the instrumentality of a third person, without the knowledge or consent of the principal, the sale is voidable, and may be set aside at the option of the principal; that in a transaction of that nature the amount of the consideration, the absence of undue advantage, and similar considerations, are wholly immaterial; and that nothing will defeat the principal's right to avoid the transaction, save and except his own confirmation after full knowledge of all the facts. Mechem on Agency, §§ 455, 461; Michoud v. Girod, 4 How. 503, 11 L. Ed. 1076; Gardner v. Ogden, 22 N. Y. 327, 78 Am. Dec. 192; Grumley v. Webb, 44 Mo. 444, 100 Am. Dec. 304; Mills v. Goodsell, 5 Conn. 475, 13 Am. Dec. 90; Bain v. Brown, 56 N. Y. 288.

But that rule has no application to the facts of this case. The uncontradicted testimony showed that Dora Hermann authorized the defendant to sell the property for $4,000, and that the defendant entered into negotiations with Sengstacken and Smith for the sale of the property in controversy some time in the early part of the month of May, 1905, and on the 17th of that month the sale was consummated and the transaction closed; the defendant, as attorney for the plaintiff and his wife, agreeing to sell the property to Sengstacken and Smith, and the latter agreeing to buy the same, at the price of $4,400, or $400 in excess of the amount Dora Hermann was willing to take for the property. On that date the purchasers gave to the defendant a promissory note, signed by both of them, for the sum of $100, payable in 10 days after date, to be applied on the purchase price of the property. The testimony also showed that, upon delivery of the promissory note, a receipt therefor was given to the purchasers by the defendant, wherein were set forth a description of the land and the terms of the sale. The receipt was not introduced in evidence, for the reason that it had been lost or misplaced, and could not be found. Testimony as to the contents of the receipt was then properly admissible, and this testimony showed that the terms of the sale were that one-half of the purchase price should be paid in cash; the remaining half to be paid in one year, to bear interest at the rate of 6 per cent. per annum, and to be evidenced by a note secured by a mortgage on the property.

The delivery by the purchasers to the defendant of the promissory note as part payment on the purchase price of the property, and the delivery by the latter to the purchasers of the receipt stating the terms of the sale and containing a description of the property, constituted an actual bona fide sale of the property by the defendant, as attorney, to Sengstacken and Smith—a sale so far completed that it could have been enforced by either the vendor or the vendees. The agency of the defendant thereupon, in all material respects, terminated. No intimation of any nature was made at that time, nor had any been made at any time prior thereto, that the defendant should become the pur-

chaser of an interest in the property. The property was sold outright to Sengstacken and Smith, without any restrictions or conditions.

The court below held that the charge of fraud in the transaction was not sustained, and in this finding we concur. Counsel for the plaintiff seek to draw the inference that there was collusion between the defendant and the purchasers, at the time the latter agreed to purchase the property on May 17, 1905, from the fact that the defendant did not inform Dora Hermann, at the time of the delivery of the deed of August 31, 1905, or thereafter, that he had purchased an interest in the property. But we do not think that the failure of the defendant to so inform his principal furnishes any support for the inference that the defendant was acting in bad faith. The seller was in no degree prejudiced by being kept in ignorance as to who the real purchasers of the land were. She received, not only the price which she herself had put upon the land, but $400 in excess thereof; and the testimony shows beyond all doubt that the sum thus received was at that time the fair value of the land. Who the purchasers were was a matter of indifference to her, so long as the price which she asked was paid in full. Glover v. Layton, 145 Ill. 92, 34 N. E. 53, 55.

After Sengstacken and Smith had themselves agreed to purchase the property, they proceeded to interest others in the transaction with a view of forming a syndicate; but that arrangement was one in which the purchasers only were interested. It was in no respect binding upon the defendant or his principal. The first suggestion that the defendant should purchase an interest in the property was made on the 30th day of August, 1905, more than three months after the sale of the property had been made to Sengstacken and Smith. The purchase by the defendant on that date of a one-twelfth interest in the property was, under such circumstances, in no sense a purchase from his principal. It was a purchase from Sengstacken and Smith, who were obligated as purchasers to pay the purchase price in the event it should be found upon examination of the abstract of title that the title to the land was in Dora Hermann.

The true rule applicable to the facts of this case is laid down by the Supreme Court of the United States in the case of Robertson v. Chapman, 152 U. S. 673, 14 Sup. Ct. 741, 38 L. Ed. 592. In that case one Polk had been appointed as agent of the plaintiff, Robertson, for the purpose of selling certain real property to M. O'Donohoe. O'Donohoe was unable to complete the payments under his contract of purchase, and before the deed was delivered to O'Donohoe, and while the same was in the hands of Polk and his partner, Chapman, as agents, to be delivered upon payment of the balance of the purchase price of the land, Polk took over O'Donohoe's contract and completed title in himself. Robertson subsequently brought suit against the agents to set aside the transaction, on the theory that Polk could not properly have taken title to the property. Mr. Justice Harlan, delivering the opinion of the Supreme Court, said:

"If an agent to sell effects a sale to himself, under the cover of the name of another person, he becomes, in respect to the property, a trustee for the principal, and at the election of the latter, seasonably made, will be compelled to surrender it, or, if he has disposed of it to a bona fide purchaser, to ac-

count, not only for its real value, but for any profit realized by him on such resale. And this will be done upon the demand of the principal, although it may not appear that the property, at the time the agent fraudulently acquired it, was worth more than he paid for it. The law will not, in such case, impose upon the principal the burden of proving that he was in fact injured, and will only inquire whether the agent has been unfaithful in the discharge of his duty. While his agency continues he must act, in the matter of such agency, solely with reference to the interests of his principal. The law will not permit him, without the knowledge or assent of his principal, to occupy a position in which he will be tempted not to do the best he may for the principal. It is earnestly contended that the evidence brings the present case within the operation of these principles. In this view of the facts we do not concur. The charge against Polk of dereliction of duty is not sustained. While there is some evidence tending to show that he desired, from the outset, to acquire an interest in this property, it does not appear that he intended to practice any deception upon the plaintiff. At any rate, he was not in fact interested in the offer made by O'Donohoe. The latter purchased on his own account, exclusively, and without any understanding that Polk was to become interested with him, or should take his place in the purchase. Polk had no expectation, when O'Donohoe's offer was accepted, of becoming the owner of the property.

"The only circumstance in the case indicating a want of frankness, on the part of Polk, in his letters to the plaintiff, was a statement in the letter of January 22, 1886, implying that he had actually collected the cash payment of $1,000. His explanation of this statement is that he had not been as diligent as he should have been in concluding the business, and he did not suppose it was of any consequence to the plaintiff whether the $1,000 came from him or from O'Donohoe. It would have been more consistent with the truth if he had then stated that he had agreed, or would agree, with O'Donohoe, to take the property, and therefore, as between himself and O'Donohoe, he was bound to make good the latter's obligations to the plaintiff. But the failure of Polk to notify the plaintiff of his agreement with O'Donohoe, immediately upon its being made, cannot affect any right acquired by him under that agreement. The sale to O'Donohoe was so far consummated that neither party was at liberty to undo what had been done. O'Donohoe executed his notes for the deferred payments, and his wife uniting with him, gave a mortgage to secure them. The notes and mortgage were delivered to, and accepted by, the plaintiff, who executed a deed to O'Donohoe, and placed it in the hands of Polk, to be delivered to O'Donohoe whenever a decree for the sale of the property was obtained, and upon the payment of the $1,000 stipulated to be paid in cash; so that, at the time Polk took the property from O'Donohoe, it was not in the power either of the plaintiff or of O'Donohoe to rescind the contract between themselves, and Polk's agency for the sale of the property had, in every material sense, terminated. Nothing then stood in the way either of O'Donohoe agreeing that Polk should take the property, or of Polk becoming a purchaser from him. If the sale to O'Donohoe was an actual sale, in good faith, so far as Polk had any agency in effecting it—if the contract between the plaintiff and O'Donohoe had been so far executed, at the time Polk took O'Donohoe's place in the purchase, that it could not be rescinded by either party to it—then Polk's agency in selling the property did not prevent him from purchasing from O'Donohoe; and his failure to give notice of his purchase, immediately upon its being made, cannot be regarded as a fraud upon the rights of the plaintiff. A real bona fide sale of the property, through the agency of Polk, and upon the terms prescribed by the plaintiff, and which sale was substantially completed between vendor and vendee, intervened between Polk's acceptance of the position of agent and his purchase of the property from the plaintiff's vendee. Upon this ground, the decree below can be sustained without impairing in any degree the rule that an agent will not be permitted to become the purchaser, without the knowledge or consent of his principal, of property committed to him for sale."

It may also be stated, as a general rule, that in all cases of the nature of the one now under consideration the decision depends upon

the application to the particular facts of the rule of disqualification. In those cases where a conflict between duty and self-interest has been shown, the purchase has been held voidable, regardless of the manner in which or by whom the sale was made.    Marquam v. Ross, 47 Or. 374, 405, 78 Pac. 698, 83 Pac. 852, 86 Pac. 1.    In the present case no such conflict is made to appear.    The defendant secured purchasers for the property, not, indeed, at the price at which he had been authorized to sell, but at a price in excess thereof.    Upon the consummation of the sale his duty to his principals ceased.'    The sale was consummated, as we have shown, on the 17th of May, 1905, and nothing then stood in the way of his agreeing three months thereafter to purchase an interest in the property.

The judgment of the court below is affirmed.