(No. 29486.—

JOHN BELLESON, Appellee, *vs.* NICKOLAS GANAS *et al.,*
Appellants.

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

HUBBARD, BAKER & RICE, (ALVIN GLEN HUBBARD, of counsel,) both of Chicago, for appellants.

ROBERT L. HUTTNER, and BECKMAN, HEALY & HOUGH, (DANIEL M. HEALY, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:

This is a suit in equity, brought by appellee in the superior court of Cook county. The purpose of the suit was to obtain a decree establishing a constructive trust on the title to certain real estate located in the city of Chicago. The prayer of the complaint was that appellant, Nickolas Ganas, the holder of the legal title, be decreed to hold the same in trust for the use of appellee and that a trust deed, executed by him on the property to John Ganas, be cancelled. It was alleged that such trust deed was without consideration.

The following facts are not controverted. Prior to 1933, appellee acquired from a bank a mortgage and two of the three notes secured by the mortgage. The mortgage covered certain real estate in the city of Chicago. The total debt secured by the mortgage was $15,000. Notes Nos. 1 and 2 were each for $1000; note No. 3 was for $13,000. Appellee first acquired notes Nos. 2 and 3, the aggregate amount of which was $14,000. The notes became due and the mortgage was in default. Appellee consulted an attorney with reference to instituting a foreclosure suit. The attorney whom he consulted asked for a cash fee of $1400 for handling the foreclosure proceed-

ings. Appellee did not then have enough cash on hand to pay the fee. He thereupon consulted his brother-in-law, appellant John Ganas. Ganas suggested that appellee employ an attorney by the name of Gekas, who was Ganas's personal attorney, and who, he suggested, might handle the case for less. Ganas was requested by appellee to consult Gekas. Some days later Ganas reported to appellee that he had talked with Gekas and that Gekas had offered to foreclose the mortgage for $1000, which would include the cost and expenses of the foreclosure, as well as attorney's fees. John Ganas offered to advance the $1000 if appellee would employ Gekas, and agreed that appellee might repay the money advanced by him at the rate of $100 per month. This arrangement was agreed to. The next day appellee procured the mortgage and the two notes. from his safety box and turned them over to Ganas to be delivered to Gekas, for foreclosure. On May 10, 1933, Ganas delivered the mortgage and notes to Gekas. Gekas executed a receipt showing that he had received the mortgage and notes from appellee for the purpose of foreclosure. This receipt was delivered by Gekas to Ganas, who delivered it to appellee. Ganas advanced the $1000 to Gekas to cover the expenses of the foreclosure suit and attorney's fees. The record shows that appellee repaid this advancement to Ganas in installments, and also paid Ganas an additional $100 for his services in connection with the foreclosure suit.

Thereafter Gekas prepared, or caused to be prepared, a complaint to foreclose the mortgage. Appellee was named as plaintiff in the suit. The complaint alleged that appellee was the owner of the mortgage and mortgage indebtedness. After the complaint was prepared, by direction of Ganas appellee accompanied him to Gekas's office where appellee signed and verified the complaint. The suit was thereupon filed by Gekas. On August 2, 1934, default was entered against the defendants in the foreclosure

suit. The cause was referred to a master. On August 8, 1934, appellee, at the suggestion of Gekas communicated to him through Ganas, purchased the remaining outstanding $1000 note, secured by the mortgage, from the bank holding same, for which he paid $500. This made appellee the owner of the entire indebtedness secured by the mortgage.

At the hearing before the master, Ganas was the only witness examined on behalf of the plaintiff, by Gekas, except an attorney who testified on the subject of attorney's fees. Ganas testified that he had charge of the foreclosure for appellee, who was his brother-in-law; that the mortgage, notes and indebtedness belonged to appellee. Ganas claimed no interest therein. The master made his report based upon this testimony, and a decree for foreclosure and sale was entered. The total amount of the indebtedness due to appellee was found by the decree to be $18,389.16. The defendants were ordered to pay said indebtedness to appellee by a day fixed by the decree. In default of such payment the premises were ordered sold by the master. Such default was made. On September 27, 1934, the sale was held. Nickolas Ganas was the only bidder. The property was sold to him for $16,500. He was also a brother-in-law of appellee, and a brother of John Ganas. Appellee was not present at the sale. No money was paid by Nickolas Ganas. The master deducted the cost and his fees and expenses, leaving a balance of $15,214.45, due to appellee from the sale. Gekas signed the name of appellee to a receipt for this balance, plus the costs and attorney's fees taxed, which were paid out of the money advanced by John Ganas to Gekas. The master's report of sale was approved. A receiver was appointed for the property during the redemption period. Appellee, by direction of Gekas, signed the receiver's bond. The master's certificate of sale was issued to Nickolas Ganas, as purchaser.

On January 17, 1936, the master executed his deed to Nickolas Ganas, conveying the property to him. The receiver made his final report. The net balance in his hands was, by the order of the court, paid over to appellee. Possession of the property was also delivered to appellee by the receiver at that time. Appellee thereupon employed a real-estate agent to handle the renting of the property and the collection of the rents. Up to the time this suit was filed, appellee received all the rents from the property from the real-estate agent, less operating expenses. Since the suit was filed the real-estate agent has held the net rentals pending the final disposition of the case. Appellee also paid all the taxes on the property from the time the foreclosure decree was entered until the time this suit was brought. He also registered the property with the Office of Price Administration, in his name, as owner, in accordance with the rent regulations promulgated by that office.

During all of this time and for some year prior thereto, Nickolas Ganas, who was unmarried, occupied a room in the home of appellee. On November 15, 1944, Nickolas Ganas procured a room elsewhere and left the home of appellee. Two days later Gekas, the lawyer who had represented appellee in the foreclosure suit, acting as attorney for Nickolas Ganas, served a notice on appellee demanding that he immediately surrender possession of the property to Nickolas Ganas. To this notice was attached a copy of the master's deed. Appellee thereupon immediately employed a lawyer. An affidavit, stating the facts as he contended they were, was prepared and filed in the recorder's office. This suit was filed shortly thereafter.

Appellee's contentions are that he delivered the mortgage and notes to his brother-in-law, John Ganas, as his agent, to be delivered to Gekas for the purpose of having the mortgage foreclosed; that Ganas acting for him employed Gekas, who was Ganas's personal attorney, to fore-

close the mortgage, and delivered the papers to Gekas for that purpose; that John Ganas betrayed the trust and fraudulently colluded with his brother, Nickolas Ganas, and Gekas, to deprive appellee of the mortgage and the mortgage debt; that he was never notified either by Gekas or any other person when the master's sale would be held; that he was not present at the sale; that both John Ganas and Gekas told appellee repeatedly after the sale that the property was bought in in appellee's name at the sale; that Nickolas Ganas purchased the property at the master's sale and paid the purchase price with the mortgage debt, which belonged to appellee, and later took title to the property by the master's deed, all without appellee's knowledge, authority or consent; that the first knowledge or notice he had that the property was bid in by, and the master's deed made to, Nickolas Ganas, was when Gekas served the notice demanding possession on November 17, 1944; that at the termination of the foreclosure proceedings, Gekas and Ganas both represented to plaintiff that he, appellee, had the title to the property; that appellee thereupon took possession of the property, paid the taxes, and exercised exclusive ownership over the same, believing that the master's deed was made to him, until November 17, 1944, when he was served with the notice by Gekas, acting for Nickolas Ganas, demanding possession of the property; that upon learning that the master's deed was made to Nickolas Ganas, appellee immediately took steps to right the alleged wrong by filing this suit.

The appellants contend that appellee owed each of them $3000, growing out of the sales of two restaurants in, or prior to, 1929, in which they claim they were partners with appellee. They further claim that in 1933 they made demand upon appellee for the payment to each of them of the sum of $3000, alleged to be due them from said alleged transactions; that appellee then stated to them that he did not have the money with which to make such payments;

that appellee then delivered to them the mortgage and notes and told them to employ a lawyer and endeavor to realize upon the mortgage and notes the amount which they claimed appellee owed them, growing out of the sales of the restaurants. Under this alleged arrangement they claim that they were the pledgees of said notes and mortgage and that they foreclosed the same in the name of appellee for their own use and benefit as such pledgees. This is their first defense to the present action.

The second defense to the action relied upon by appellants is that in December, 1935, after the master's sale, they made an agreement with appellee under which appellee was to take possession of the property upon the issuance of the master's deed, operate and collect the net rentals therefrom until he had received the aggregate sum of $8500, less the amount he would receive from the net balance in the hands of the receiver; that upon the receipt of said sum of $8500 by appellee from the receiver and the net rentals, the property should then belong to appellants, free and clear of all claims of appellee. They further contend that pursuant to this agreement they caused the funds in the hands of the receiver to be paid to appellee, possession of the property delivered to him and permitted him temporarily to collect the rents therefrom. They further claim that on September 14, 1936, a new agreement was made, under which appellee agreed with appellants that he would accept $5000 cash in lieu of the sum of $8500, which he had agreed in December, 1935, to accept from the rents, in full, for his interest in the property; that appellants thereupon agreed to procure the sum of $5000, which they would pay to appellee in full satisfaction of his interest in the property; that pursuant to this agreement Nickolas Ganas executed a trust deed to John Ganas on the property securing a note for $5000, in order to procure a loan for that amount on the property; that appellee thereafter refused to accept said sum of $5000, and the note and trust

deed were never negotiated, although the trust deed was placed of record. These alleged transactions and agreements, testified to by appellants, were all denied by appellee.

No witness testified concerning the numerous alleged transactions involved except the parties to the suit. The decision of the case is, therefore, wholly a question of the credibility of the parties and is dependent upon the facts appearing from the mass of conflicting testimony in the record.

Appellants filed a counterclaim setting up the above facts. By the counterclaim they asked that appellant Nickolas Ganas be decreed to be the owner of the property, and that appellee be required to account for all rents received by him. Issues were joined on the complaint and the counterclaim. The cause was heard in open court by the chancellor without reference to a master. At the conclusion of the evidence the court found the facts in favor of appellee and against appellants. A decree was entered establishing a constructive trust in the property in favor of appellee. Nickolas Ganas was ordered to convey the property to appellee within twenty days from the entry of the decree. In default of such conveyance, the master was ordered to make the deed. By the decree the court also cancelled the unnegotiated but recorded trust deed and note executed by Nickolas Ganas to John Ganas, as prayed for in the complaint. For the purpose of reviewing that decree, appellants have perfected a direct appeal to this court, the title to real estate being involved.

It may be safely asserted that the testimony of appellee, if accepted, fully sustains his contentions. Although he was contradicted by appellants, he was corroborated in part by disinterested witnesses, by documentary evidence, by public records, and by other facts and circumstances shown in the record. As to the dates in August, 1933, on which appellee testified he visited Gekas and talked with him in his office, he was disputed by Gekas. Gekas was

corroborated by a passport showing that he was not in his office in the month of August, 1933. He admits, however, that appellee was in his office on three different occasions, in connection with the foreclosure. Whether some of these visits were in August, as testified to by appellee, or at some other time, is wholly immaterial. Appellee was testifying from memory as to the dates he visited Gekas's office more than twelve years before he gave his testimony. Such discrepancies are without significance.

On the other hand, if the testimony of appellee be disregarded and the testimony of appellants be given full credit, it is possibly sufficient to support their claims. They are, however, not only contradicted by appellee, but to some extent they are discredited by public records in evidence and by facts and circumstances appearing in the record, concerning which there can be no controversy. They are particularly discredited by the fact that, with appellant Nickolas Ganas living in the home of appellee, they permitted appellee to operate and manage the property, collect all the rentals and pay the taxes for a period of nearly ten years, without making any claim that they owned the property or in any way questioning appellee's exercise of all the indicia of ownership. The further fact that Nickolas Ganas moved from the home of appellee only two days before Gekas, as his attorney, served the demand for possession of the property on appellee, to which notice was attached a copy of the master's deed, does not add anything to the credibility or the weight and credit to be given to the testimony of appellants. Gekas was dismissed as a defendant in the suit before the decree was entered. The fact that he is not now party to the record makes it unnecessary for us to characterize his connection with the activities of appellants.

It is true there are some discrepancies and contradictions in the testimony on both sides. The testimony covered a number of alleged transactions between the parties,

extending over a period of some forty years, none of which were in writing or evidenced by any written instrument executed by either of the parties. Whether these discrepancies and contradictions were the result of faulty memory, lack of understanding of the alleged transactions, or were the result of deliberate falsehood, we need not attempt to determine. The evidence was heard before the chancellor in open court. The record shows a commendable patience and careful consideration by the chancellor throughout the trial in attempting to assist the witnesses on both sides to fully express their recollections of the numerous transactions involved, as well as to permit both sides to fully develop their contentions. He had an opportunity to hear and observe the witnesses while testifying and was in a position to better judge their credibility.

The chancellor concluded that the facts shown by the credible evidence sustained appellee's claims. He found the material facts in favor of appellee. Upon a careful examination of all the evidence in the record, we are clearly convinced that he was justified in so doing. Such finding is not contrary to the manifest weight of the evidence. In this situation this court would not be warranted in reaching a different conclusion from that reached by the trial judge, who saw the witnesses and heard them testify, and who was in a better position to weigh their testimony and determine where credit should be given. The record shows that the trial court felt compelled, in at least one instance during the hearing, to make certain observations as to the conduct of Nickolas Ganas while he was on the witness stand and the manner in which he gave his testimony.

In *Finney* v. *White,* 389 Ill. 374, we said that where the testimony is heard in open court, we will not disturb the findings made by the chancellor, unless they are clearly against the manifest weight of the testimony. The chancellor's means of determining which witnesses were more

worthy of credit were superior to ours, and his conclusions cannot be disregarded unless manifestly against the weight of the evidence. (*Parker* v. *Ruley,* 317 Ill. 441.) This rule has been announced in cases almost innumerable, and has been strictly followed over a long period of years.

The facts found by the trial court fully justified his conclusion that a trust was established. Beyond question there was a fiduciary relation shown between John Ganas and appellee. Title to the property was placed in the name of Nickolas Ganas under the master's deed, obviously for the benefit of himself and John Ganas, as a result of an abuse and violation of the fiduciary relation existing between John Ganas and appellee. Throughout the foreclosure proceedings, John Ganas was acting as agent for appellee. Not only is this definitely established by the uncontradicted evidence, but John Ganas so testified, under oath, as a witness before the master in the foreclosure suit.

That a fiduciary relation exists between principal and agent is too well settled to require the citation of authorities. Where one person occupying a fiduciary relation with another deals with the subject matter of the relationship and thereby gains an advantage to himself, he will be deemed guilty of fraud, either actual or constructive, depending upon his intent and purpose. If he obtains title to property by virtue of his relations, equity will convert him into a trustee of the legal title. Constructive trusts are raised by equity for the purpose of working out right and justice where there was no intention to create such relation, and often directly contrary to the intention of the party holding legal title. *Doner* v. *Phoenix Joint Stock Land Bank,* 381 Ill. 106.

One general class of constructive trusts consists of those cases in which a confidential relation exists and there is a subsequent abuse of the confidence reposed. This is sufficient to establish such trust. (*Giese* v. *Terry,* 382 Ill. 34.) Clearly, the record in this case shows facts from which

equity will declare a constructive trust as to any interest which John Ganas now has or claims in the property, which was the subject matter of the foreclosure suit.

Nickolas Ganas purchased the property at the master's sale with the co-operation and assistance of Gekas and John Ganas, with appellee's money. He paid nothing from his own funds. The mortgage debt which clearly belonged to appellee was used to purchase the property and was the sole and only consideration for the master's deed.

The most frequent facts out of which a resulting trust arises are where one person pays the purchase money for property and the conveyance of the legal title is made to another. Evidence of intention of the party to create a resulting trust is not necessary to its existence. If one party pays the purchase money for land and the deed is made to another, in the absence of all evidence of intention, the law presumes a trust. The presumption is in favor of the trust resulting to the party paying the consideration and the burden is on the one holding the legal title to show that it was intended that he was to have some beneficial interest in the property. (*Lutyens* v. *Ahlrich,* 308 Ill. 11.) This rule is particularly applicable to the case made by the record against Nickolas Ganas.

The legal title of record to the property involved was acquired as the result of a breach and violation of the fiduciary relation existing between John Ganas and appellee. It was purchased by Nickolas Ganas at the master's sale with funds wholly belonging to appellee. The legal title to the premises was wrongfully placed in Nickolas Ganas and, in equity, he held such title for the use and benefit of appellee, who was the beneficial owner thereof.

The attempt of appellants to show that they had an interest in the mortgage debt was based upon certain alleged agreements and transactions between them and appellee, extending over a period of forty years. This was an affirmative defense. The burden of establishing such defense

was upon appellants. They failed to discharge that burden by evidence which the chancellor was willing to accept as credible. He correctly ruled that the conversations between John Ganas, as appellee's agent, and Gekas, were inadmissible. Our approval of the findings of the chancellor of the facts in the case renders it unnecessary for us to consider the other errors urged relating to the exclusion of evidence offered.

As to both appellants a trust was clearly established. Whether it be designated as a constructive trust or a resulting trust is wholly immaterial. The evidence clearly establishes a constructive trust against appellant John Ganas. It equally establishes a resulting trust against appellant Nickolas Ganas. In our opinion the decree is amply sustained by the greater weight of the evidence, and is in harmony with long-settled, applicable rules of law.

The decree of the superior court of Cook county is affirmed.

*Decree affirmed.*