## PITTSBURGH EQUITABLE METER CO. v. PAUL C. LOEBER & CO. (two cases).

### Nos. 9092, 9240.

Circuit Court of Appeals, Seventh Circuit.

March 27, 1947.

Rehearing Denied April 25, 1947.

Vincent O'Brien, of Chicago, Ill. (Defrees, Fiske, O'Brien & Thomson Richard E. Voland, all of Chicago, Ill., of counsel), for appellant.

Henry A. Gardner, Alfred T. Carton, James H. Douglas, Jr., Erwin W. Roemer and Edwin R. Eckersall, all of Chicago, Ill. (Gardner, Carton & Douglas and Wayland B. Cedarquist, all of Chicago, Ill., of counsel), for appellee.

Before SPARKS, MAJOR and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

The appeal in No. 9092 is from a judgment for plaintiff in its suit to recover a secret profit alleged to have been received by defendant as plaintiff's agent. Defendant filed its motion to dismiss the complaint on the ground that it failed to state a recoverable cause of action, and on the specific ground that it failed to show that defendant was under any duty to plaintiff, as fiduciary or otherwise, with respect to any matters concerning the sale of plaintiff's property here in issue, during the time certain alleged offers to purchase it were said to have been made. The court denied this motion, and thereupon defendant filed its verified answer of admissions and denials, and asked that the complaint be dismissed at plaintiff's costs. Plaintiff then filed its motion for summary judgment upon the pleadings. The court, after finding the facts specially and stating its conclusions of law thereon, sustained plaintiff's motion and .ndered judgment for it in the sum of $14,000, with interest at the rate of 5% per annum from and after April 23, 1945, and for costs. From that judgment this appeal is prosecuted.

Both parties and the trial court agreed that there were no material facts controverted before that court. Hence, the questions before us are of a legal and equitable character, and they arise out of the following uncontroverted facts.

Plaintiff is a corporation engaged in the manufacture and sale of meters of various kinds, with its principal office in the city of Pittsburgh, Pennsylvania. Defendant is a corporation engaged in the real estate brokerage business, and at least one of its principal officers is a duly licensed real estate broker. It principal place of business is in Chicago, Illinois.

On February 14, 1945, plaintiff was the owner of the real estate here involved. On that date, plaintiff, being desirous of selling this property, by an instrument in writing, appointed the defendant exclusive broker, for a period of ninety days from that date, to obtain a purchaser for the property at a price of $50,000, naming the lowest price of $40,000, and agreeing to pay defendant an amount equal to 5% of the selling price, in the event defendant procured a buyer or in the event the real estate was sold within the ninety-day period by plaintiff or any other broker. Defendant accepted this exclusive agency.

On March 1, 1945, the defendant offered plaintiff $500 for an exclusive option to buy the property for itself at $35,500. On March 7, 1945, plaintiff accepted this offer, receiving the $500, and in writing granting to defendant an exclusive option to purchase the property. Defendant prepared this option which ran to April 25, 1945. At the time of its execution defendant made a full disclosure to plaintiff of all facts relating to the matter which were then within the defendant's knowledge. Prior to the execution of the option, the property was not advertised for sale by the defendant. This record does not disclose that defendant made any effort whatever to sell the property prior to the execution of the option.

After the option was executed and delivered, defendant promptly advertised the property for sale, and on March 15, 1945, it received from a Mr. Carroll an offer of $45,000 for the property, which it declined. On March 16, Mr. Carroll made a written offer to the defendant of $50,000 for the property. This offer was accepted in writing by the defendant on March 28, 1945, on

terms which were mutually agreeable to Mr. Carroll and the defendant.

On March 30, 1945, the defendant exercised its option to buy the property from plaintiff at $35,500. At that time it made no further disclosures other than those made on March 7, 1945. When it exercised its option to purchase, it designated Gertrude H. Hellenthal as nominee to take the title.

On April 2, 1945, Miss Hellenthal deeded the property to the Chicago Title and Trust Company and on the same date the latter company deeded the property to Carroll. Both of the last-named deeds were filed for record in the Recorder's office of Cook County, Illinois, on April 23, 1945.

■ It is plaintiff's contention that the defendant was in duty bound to disclose all the facts within its knowledge up to and including the time when it exercised its option to buy the property. It is the defendant's contention that it had performed its full duty to plaintiff when it made a full disclosure of all the facts within its knowledge at the time it secured the option. It further contends that the option for a cash consideration then received by the owner of the property from the defendant, operated to revoke the exclusive sales agency appointment of defendant by plaintiff made on February 14, 1945, notwithstanding the fact that such written appointment stated that it would be in force and effect "for ninety (90) days from the date hereof and thereafter, until this Agreement is revoked by us (plaintiff) in writing, by registered mail, ten (10) days in advance, addressed to you (defendant)." This instrument was prepared by defendant on paper carrying its own letterhead. When the option was executed, neither party said one word about revoking the appointment, and we think it did not revoke it, notwithstanding that a consideration was paid for the option. The two instruments dealt with the same subject matter for the purpose of accomplishing the same result, and merely gave defendant alternative methods for accomplishing that result.

There was nothing inconsistent between the agency appointment and the option except as to the method by which both parties sought to accomplish the sale of plaintiff's property. Of course the legal and equitable pursuit of one method to a finality would preclude the pursuit of the other, but the mere taking of an option, for a consideration, to purchase the property, would not preclude defendant from recovering on its agency appointment in case it decided not to exercise or could not exercise the option, and sold the property to another. There was no way of telling which method it would adopt until it exercised the option. It did not do this until after it had bargained to sell the property to Carroll.

If taking the option revoked the agency appointment, as urged by defendant, then defendant had no authority to bargain with Carroll on March 28, for at that time the legal and equitable title was in plaintiff, and defendant had neither, nor was it entitled to either until it had exercised the option by complying with its terms. Nevertheless, defendant delayed the exercise of the option until several days after it had bargained with a purchaser at $50,000 which was the price originally asked by plaintiff in the agency appointment. Without disclosing this fact to plaintiff, it exercised the option by paying plaintiff $35,500, completed the transaction, received $50,000 and pocketed the difference as its profit.

■■ However, we think the option did not revoke the agency, and when defendant bargained with Carroll it bargained as agent for plaintiff, for it had not yet exercised the option. Under such circumstances equity will not permit an agent to profit, from a sale of its principal's property, in excess of the amount fixed by their solemn obligations. If at the time defendant exercised its option, plaintiff had been apprised of defendant's bargain with Carroll, and had refused to execute its deed to defendant or its nominee, we have no doubt that equity would not require such execution, even though defendant had paid a consideration for the option. The fact that defendant concealed from plaintiff the vital information concerning defendant's bargain with Carroll prior to the former's exercise of the option, and thereby secured plaintiff's deed for the property, will not aid it in defeating plaintiff's rights. True,

defendant exercised its option before its right to do so had expired. However, when it chose to delay the exercise of its option, we think it took the risk of acquiring information beneficial to itself and quite detrimental to its principal, which it was in duty bound to disclose to its principal before exercising its option. Of course, such requirement would most likely defeat the option, and it should do so. Likewise a valid exercise of the option would abrogate the agency, but until one or the other method of selling the property was abandoned, the choice of methods was open to the defendant. During that time defendant was representing itself and its principal, which the law permits, providing good faith is exercised and a full disclosure is made of all the facts.

It would seem to us, under such circumstances, that the only proper method to pursue, in order to protect both parties, would be for the agent to exercise his option before acquiring such information as would defeat his option unless full disclosure thereof was made to his principal, and this should be true regardless of how long his option ran, for until such option was exercised he was still representing his principal as well as himself, and equity will not permit him to overreach the former in the way of profits to himself, except after full disclosure of the facts to his principal.

No case has been cited, nor have we found one, wherein the facts are precisely the same as they are here. In Rieger v. Brandt, 329 Ill. 21, 160 N.E. 130, 133, the court said: "* * * The rule well established in equity is that the relation existing between a principal and agent for the sale of property is a fiduciary one, and the agent, in the exercise of good faith, is bound to keep his principal informed on all matters that may come to his knowledge pertaining to the subject matter of the agency. He may not *purchase* (our emphasis) his principal's property except upon the fullest disclosure of all matters within his knowledge which may affect its value. * * * This is the general rule."

However, in that case there was no option or disclosure. The agent merely wrote the principal that there were several parties, including himself, who would buy the property at $400 per acre, when in fact he had higher offers but did not disclose them. In Neighbor v. Pacific Realty Ass'n, 40 Utah 610, 124 P. 523, Ann.Cas. 1914D, 1200; Gessleman v. Phillips, 110 Neb. 416, 193 N.W. 750; Rattray v. Scudder, Cal.Sup., 169 P.2d 371, 164 A.L.R. 1356; and Beer v. Lea, 7 Dom.L.R. 434, the agency appointments and the options were executed concurrently and there were no considerations for the options. In Walling v. Poulsen, 160 Mich. 392, 393, 125 N.W. 373, the option was executed subsequent to the agency agreement and it was without consideration.

All the cases seem to hold that an option without a consideration is nothing more than a mere offer.

In Belleson v. Ganas, 394 Ill. 557, 69 N.E.2d 321, 326, the court said: "That a fiduciary relation exists between principal and agent is too well settled to require the citation of authorities. Where one person occupying a fiduciary relation with another deals with the subject matter of the relationship and thereby gains an advantage to himself, he will be deemed guilty of fraud, either actual or constructive, depending upon his intent and purpose. If he obtains title to property by virtue of his relations, equity will convert him into a trustee of the legal title. * * *"

Where an agent acquires an interest in the principal's property with the intervention of the latter, the transaction will be sustained if at the time such agreement was entered into the agent made full disclosure of all material facts then within his knowledge. Crosby v. Dorward, 248 Ill. 471, 94 N.E. 78, 140 Am.St.Rep. 230; Carter v. Love, 206 Ill. 310, 69 N.E. 85; Slemmons v. Dime Savings & Trust Co., 340 Ill. 385, 172 N.E. 821; Pomeroy, Equity Jurisprudence, 5th Ed., Vol. 3, Sec. 959b. It seems to be well settled that after a fiduciary relation has been properly terminated the agent may deal with the principal at arm's length. Robertson v. Chapman, 152 U.S. 673, 14 S.Ct. 741, 38 L.Ed. 592; Glover v. Layton, 145 Ill. 92, 34 N.E. 53; Linn v. Clark, 295 Ill. 22, 128 N.E. 824; Hermann v. Hall, 9 Cir., 217 F. 947.

The fact that the agent resold the property at a profit within a short time

after obtaining his option does not of itself evidence bad faith or unfairness at the time of the execution of the option agreement. Glover v. Layton, 145 Ill. 92, 34 N.E. 53; Hermann v. Hall, 9 Cir., 217 F. 947; Rathke v. Tyler, 136 Iowa 284, 285, 111 N. W. 435.

The decisions to which we have referred and those upon which both parties rely, in our judgment, raise no contrariety of opinion, and we think none of them controvert our holding, nor are they decisive in every respect of the question before us. It seems that the only question upon which there is any disagreement between the parties now before us is whether the execution of the option terminated the agency agreement. From a discussion of the cases referred to, and others which we have not cited, defendant's counsel argues that it is apparent that the option agreement in the instant case necessarily terminated the agency, and that in the true sense, the option is absolutely inconsistent with the continuing of the fiduciary duty on the part of the optionee. No case is cited, and we have found none which support this doctrine. In Fitzgerald v. Boyle, 57 Utah 234, 193 P. 1109, 1111, which is cited by appellant in support of the proposition that an option unsupported by consideration is nothing more than a continuing offer, the court stated: "It is also a well-established doctrine that one and the same person may enjoy the privilege of purchasing, and at the same time have the right of selling on commission either personal or real property. * *' *"

The fact that a consideration was paid for the option would only prevent the grantor from withdrawing the option until it had expired. Such situation occurs in all the cases where the option is granted contemporaneously with the agency appointment, and we find no case in which either provision has been held to terminate the other.

The judgment is affirmed.

The judgment in Cause No. 9092 was rendered against the defendant corporation on March 6, 1946. Thereupon, the defendant filed notice of appeal on March 25. On July 8, plaintiff filed its sworn complaint in the present action in the same court in which the judgment had been obtained. It was an ordinary judgment creditors' bill in aid of execution. It named as defendants the corporate judgment debtor, and Paul C. Loeber, its president. The complaint alleged the unsatisfied judgment in Cause No. 9092 and the marshal's return of nulla bona. After averments as to the identity of the parties, it set forth, on information and belief, that the corporate defendant had property of various. kinds, including debts due it; that the individual defendant had property belonging to the corporation; and that, if the corporate defendant transferred the property, the transfer was invalid. It claimed discovery of all property, effects, and things in action belonging to the corporate defendant, and propounded questions as to its property. The complaint prayed for a decree directing the application of the corporate defendant's property to the judgment in Cause No. 9092, for an injunction as to disposition of its property, and for the appointment of a receiver of all its property and effects.

On July 9, plaintiff moved for the appointment of such receiver. Defendants' counsel thereupon stated to the court that there was an appeal pending from the judgment rendered, but there was no supersedeas; that it might be that counsel could make some arrangements with Loeber whereby he could make the appeal a supersedeas, and for this reason defendants' counsel asked time to consider the allegations of the complaint.

The court continued the matter until July 11, 1946, and on that date defendants' counsel stated to the court that the chief asset of the corporate defendant's business, and its only substantial asset, was the individual defendant Loeber's personal ability to get business and take care of the company's affairs, that Loeber was working on two substantial matters on which there should be commissions; and that he was endeavoring to make security for the judgment. Loeber himself stated to the court that their principal asset was their files and good will; that they had been in business for nearly forty years; that he was trying to get a mortgage on his home, and that he might make some deals on commissions.

Defendants' counsel stated that, if time were granted, Loeber would make an effort to obtain security, and that the corporation's property would be held intact so that, if security could not be obtained and a receiver were appointed, the same property would go to the receiver later as would go to him then. After a further discussion, the court stated that it would continue the matter until September 9, if defendants' counsel would agree to an injunction restraining the transfer of any property or cash that came in. This was agreed to and an injunction order was accordingly entered on July 12. The order recited, among other things, that defendants' counsel and Loeber had requested the continuance so that the corporate defendant might have an opportunity to arrange for the filing of a supersedeas bond staying execution on the judgment. The order enjoined the corporate defendant from transferring any property pending further order of the court and directed the corporate defendant to deposit with the clerk of the court all funds coming into its hands after payment of expenses, excluding the payment of a salary to defendant Loeber.

On September 9, there was a further discussion before the court, and defendants' counsel stated that Loeber was still endeavoring to raise funds, and a ten-day continuance was requested. Loeber stated to the court that the company was paying 50% of its commissions to its salesmen and retaining the balance; that the company was better off then than several weeks before, and the receivership would ruin the organization; that the company's cash profit on the transaction involved had been used up for expenses, and that he had not been able to work efficiently because of the lawsuit. Under these circumstances the matter was continued to September 16, then to September 17, and then to September 19.

On September 19, defendants' counsel objected to the appointment of a receiver on several grounds, stating that, there being no assets or property which the receiver could receive, the appointment of a receiver could not do any good and would do nothing but harm. The defendants' counsel stated to the court that the defendant corporation had approximately $1000 on hand

which had not been turned over to the clerk of the court, but that that amount was not an unreasonable reserve to hold for petty requirements. At that time the judge stated that he thought plaintiff was entitled to a receiver but that on the other hand it would not accomplish anything. Later in the discussion Loeber stated that his home was worth $65,000 and was subject to an $18,000 mortgage and that he had tried very hard to sell it and was trying to make a loan and had some deals of that nature on then.

Plaintiff's counsel (without objection on the part of defendants' counsel) quoted from a credit report concerning defendant Loeber, and, in commenting on that report, stated that the judgment of a Chicago bank for $11,000, rendered against him personally in December, 1945, had been satisfied, and the court commented that it might be that this bank payment was paid with the money which defendant had received from the sale of plaintiff's property. Loeber then reiterated that he was trying to sell his property, that he had several deals on, that one man was in New York and would be back that week. Thereupon the court continued the matter until October 21. On that day, plaintiff's counsel informed the court that the situation was the same as at the last hearing; that no bond had been filed in the appeal, and that the motion for a receiver was pending. The court said: "I guess I will have to appoint one." Thereupon defendants' counsel said: "There are no assets in this corporation. * * * How much bond will your Honor set? * * * There are no assets, but, of course, a receiver may do substantial damage." The court thereupon appointed a receiver and fixed his bond at $500, stating at the time: "If you feel the bond should be increased any time, come in, but I don't want to charge the estate."

On the same day the defendants, by permission of court, filed their answer, which was sworn to by Loeber. It admitted the judgment and the return of the unsatisfied execution. It alleged that the company had no property subject to execution, except office equipment, that Loeber was its chief stockholder, that the appointment of a receiver would result only in embar-

rassment to him and could serve no useful purpose.

In answer to interrogatories propounded by plaintiff, the answer stated that the company had assets of furniture and fixtures of the value of $1,776.90, uncollectible debts due from its salesmen in the amount of $3008.89, and cash on hand in the sum of $229.48; that no property of the company had been transferred; that Loeber had no property of the company; that Loeber owed the company $10,448.84, and that the company owed him $11,900 for his unpaid salary, ending April 30, 1946.

The sole issue presented to us is whether under the circumstances the District Court abused its discretion in appointing the receiver. If it did not we shall be compelled to affirm the order. Chicago Title & Trust Co. v. Mack, 347 Ill. 480, 180 N.E. 412; Ward v. Central Trust Co., 7 Cir., 252 F. 127; Dutton v. Thomas, 97 Mich. 93, 56 N.W. 229. The burden of establishing such abuse is placed upon the complaining party. Dutton v. Thomas, supra; Ward v. Central Trust Co., supra; Clark, Receivers (1929) Vol. I, sec. 53; Pomeroy, Equity Jurisprudence (1919) Vol. IV, sec. 1484; 5 C.J.S., Appeal and Error, § 1584.

Since very early days, courts of equity have appointed receivers at the request of judgment creditors when execution has been returned unsatisfied. Bloodgood v. Clark, 4 Paige's Chancery Reports (N. Y.) 574; Fuller v. Taylor, 6 N.J.Eq. 301; Gage v. Smith, 79 Ill. 219; Edwards v. Rodgers, 41 Ill.App. 405; Dutton v. Thomas, supra; Nartzik v. Ehman, 191 Ill.App. 71; Nelson v. Brodfuehrer, 211 Ill.App. 396. Of course, under the Business Corporation Act of Illinois, R.S. Ch. 32, sec. 157.87, special requirements must be met to have a receiver appointed in a proceeding to liquidate a corporation. However, the right under that section is purely statutory, and it in no manner delimits the power of an equity tribunal to appoint a receiver for a defendant in a judgment creditors' suit. The appointment of such a receiver is a branch of equity jurisdiction not dependent upon any statute. That right is based primarily on the ground that equity will come to the aid of any one who has exhausted his remedies at law. Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763. It is further based on the equitable consideration that the return of an execution nulla bona raises the inference that the debtor's property, if any, will be misapplied, or, if it has transferred any property, that it may have been misapplied. Clark, Receivers (1929) sec. 189. It has been suggested that such a procedure would amount to a mere fishing expedition. This may be conceded but it enjoys the distinction of having the approval of the elemental principles of equity. Plaintiff proceeds at the peril of costs, and the defendant cannot be injured beyond that which its own acts have caused.

Appellant calls our attention to the fact that the court observed on more than one occasioned that nothing could be accomplished by the appointment of a receiver. All of these remarks occurred in the same colloquy between counsel and the court on September 19, 1946. The subject matters then under discussion were the harmful effect upon Mr. Loeber of such appointment, and his efforts to secure a mortgage loan upon his residence, or to sell it, which he valued at $65,000 and on which there was an existing mortgage of $18,000. It will be remembered that the judgment was then over six months old; this complaint was filed on July 8; a receiver was requested on July 9; and the matter was continued respectively on July 11, September 9, and September 19, and neither party asked for further continuance.

The court thereupon said: "I have given him plenty of time. * * * I think you are entitled to a receiver, Mr. Eckersall, but on the other hand, it won't accomplish anything."

Mr. Eckersall replied: "I don't know, Judge, but I don't know any other way to proceed. A levy would avail me nothing."

Here counsel for defendants, among other things, said: "* * * the greater harm * * * is to have a receiver."

The Court: "There is no doubt about that. I agree with you on that."

Counsel for defendants: "A sixty-seven year old man—it will ruin him."

The Court: "Notwithstanding, he has a judgment, and Mr. Eckersall has a right to enforce his judgment. * * * He is taking the chance as much as Mr. Loeber is in the appointment of a receiver, but there is a judgment."

Again, in the same colloquy:

Mr. Eckersall: "I suspect it (the receivership) would have some deleterious effect."

The Court: "The receiver could not do anything."

Mr. Eckersall: "Judgment was entered; execution issued; no property found, no part satisfied. I have just no alternative but to press the motion. I have to do everything I can to collect the judgment. * * * If I could think of another thing to do, or counsel would suggest something to do, to collect the judgment, I will be glad to do it."

The Court: "Why didn't you (Loeber) apply for a loan some time ago?"

Counsel for defendants: "He was trying, during the period prior, to sell the property."

■ These remarks of the court were not intended to be either findings of fact or conclusions of law, and it seems to us that they were made only for the purpose of assisting the parties in getting an amicable adjustment of their differences, and they are neither binding on the court nor the parties. Regardless of the court's views as to the outcome of the receivership, we think he stated the law correctly and did right in appointing a receiver.

■ Appellants concede that the appointment of a receiver lies in the discretion of the court, and they urge that such appointment should not be made except upon a strong showing of necessity. In support of this thesis they rely upon Johnson v. Manhattan Ry. Co., 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331; Strickland v. Peters, 5 Cir., 120 F.2d 53; Hardy v. North Butte Mining Co., D.C., 20 F.2d 967; Maxwell v. Enterprise Wall Paper Co., 3 Cir., 131 F.2d 400; and Pusey & Jones Co. v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 455, 67 L.Ed. 763. Not one of these cases involved a judgment creditor, and that one fact differentiates them from the case at bar. In the last-named case the Supreme Court said: "* * * A receiver is often appointed upon application of a judgement creditor who has exhausted his legal remedies. See White v. Ewing, 159 U.S. 36, 15 S.Ct. 1018, 40 L.Ed. 67. * * * The only substantive right of a simple contract creditor is to have his debt paid in due course. His adjective right is, ordinarily, at law. He has no right whatsoever in equity until he has exhausted his legal remedy. After execution upon a judgment recovered at law has been returned unsatisfied, he may proceed in equity by a creditors' bill. (Citing cases.)"

Appellants further contend that as a matter of law it is error to appoint a receiver when there are no assets and when only harm can result. In support of this contention, they rely on In re Hawkins Mortgage Co., 7 Cir., 66 F.2d 16; Jones v. Maxwell Motor Co., 13 Del.Ch. 76, 115 A. 312; Tachna v. Pressed Steel Car Co., 112 N.J.Eq. 411, 164 A. 413. None of these cases involve a judgment creditor, and for that reason we think they are not controlling here.

The judgment is affirmed.